# Exhibit B

*In re SCANA Corporation Securities Litigation*, Civ. A. No. 3:17-CV-2616-MBS

**Allegations Demonstrating Defendants' Actual Knowledge**

| Date and Source | Complaint and Exhibit Cite(s) | Information Demonstrating Defendants' Knowledge That Their Statements And Omissions Were False And Misleading |
|---|---|---|
| March 2015 progress charts discussed at the Executive Steering Committee meeting | ¶¶ 95-97 | Marsh and Roquemore, as members of the Executive Steering Committee received this information in March 2015, and the data was then forwarded to Byrne in April 2015. This internal data demonstrated that: (a) projected costs **"would be off the chart" and "significantly over budget;"** (b) the Nuclear Project progressed only 8% in the prior 24 months, equaling **a current monthly progress rate of 0.33%;** and (c) at that rate, the Nuclear Project would only be **35% completed by July 2019**, the current Guaranteed Substantial Completion Date. |
| October 22, 2015 Bechtel Presentation | ¶¶ 109-13<br><br>SCANA Ex. 12 | Following weekly updates presented to Defendant Marsh between August 10, 2015 and October 16, 2015, and a direct presentation to Defendant Marsh on October 16, 2015, Bechtel presented its conclusions to Marsh, Byrne and others from SCANA and Santee Cooper on October 22, 2015. Bechtel informed Defendants, that:<br>• "The Consortium's forecasts for schedule durations, productivity, forecasted manpower peaks, and percent complete **do not have a firm basis**. Bechtel's preliminary assessment of the Unit 2 and 3 Commercial Operation Dates indicates:<br><br>| Impacts on Commercial Operation Dates | | |<br>|---|---|---|<br>| | Unit 2 | Unit 3 |<br>| Current COD | June 2019 | June 2020 |<br>| Adjustment | 18 to 26 months | 24 to 36 months |<br>| New COD | Dec 2020 to Aug 2021 | June 2022 to June 2023" |<br><br>    o The above schedule was based on "Key Assumptions," including the availability of "all modules and material," "all equipment [is kept] operationally ready;" any "no construction equipment limitations." Failure to comply with these assumptions would add more time to the schedule.<br>• "The issued **design is often not constructible** resulting in a significant number of changes. The construction planning and constructability review efforts are not far |

1

*In re SCANA Corporation Securities Litigation*, Civ. A. No. 3:17-CV-2616-MBS

**Allegations Demonstrating Defendants' Actual Knowledge**

| Date and Source | Complaint and Exhibit Cite(s) | Information Demonstrating Defendants' Knowledge That Their Statements And Omissions Were False And Misleading |
|---|---|---|
|  |  | enough out in front of the construction effort to minimize impacts." <br>• "[**SCANA and Santee Cooper] do not have an appropriate project controls team** to assess/validate Consortium reported progress and performance." <br>• "There is **a lack of accountability** in various [SCANA and Santee Cooper] and Consortium departments" <br>• "The approach taken by [SCANA and Santee Cooper] **does not allow for real-time, appropriate cost and schedule mitigation**." <br>• "The Consortium's project management approach **does not provide appropriate visibility and accuracy** to [**SCANA and Santee Cooper**] on project progress and performance." |

2

*In re SCANA Corporation Securities Litigation*, Civ. A. No. 3:17-CV-2616-MBS

**Allegations Demonstrating Defendants' Actual Knowledge**

| Date and Source | Complaint and Exhibit Cite(s) | Information Demonstrating Defendants' Knowledge That Their Statements And Omissions Were False And Misleading |
|---|---|---|
| November 9, 2015 First Bechtel Report | ¶¶ 114-18, 128<br><br>Ex. D | In addition to the representations made in the October 22, 2015 Bechtel Presentation, above, the First Bechtel Report addressed the October 27, 2015 EPC Amendment noting that its existence did not change Bechtel's conclusions about the Nuclear Project:<br>> The recently announced acquisition of CB&I and WEC and the hiring of another construction contractor" could "**caus[e] further delays in mitigating the resulting project impacts**" because "the issues at V.C. Summer rest with both engineering, procurement, and construction, but our observation is that the resolution of those issues are driven too often by commercial considerations rather than by overall EPC logic, often to the detriment of the Owners."<br><br>Bechtel also specifically noted that:<br>- "Based on Bechtel's assessment, **the current schedule is at risk**" because "[t]he to-go scope quantities, installation rates, productivity, and staffing levels **all point to project completion later than the current forecast**."<br>- "The monthly progress report shows construction progress advancing approximately 0.5% per month with a total to date (August 2015) of 21% complete. **In order for the plant to complete on schedule, monthly construction progress must increase close to 3%**." |
| February 5, 2015 Second Bechtel Report | ¶¶ 123-28<br><br>Ex. E | After months of "wrangling," SCANA management instructed corporate counsel to force Bechtel to remove several conclusions concerning the schedule and the EPC Amendment's likely contribution of "further delays" to the Nuclear Project.<br><br>The Second Bechtel Report still contained many of the same conclusions from the First Bechtel Report, including that monthly progress rates had to increase from 0.5% to 3%. After the Second Bechtel Report was disclosed in September 2017, *The Post and Courier* |

3

*In re SCANA Corporation Securities Litigation*, Civ. A. No. 3:17-CV-2616-MBS

**Allegations Demonstrating Defendants' Actual Knowledge**

| Date and Source | Complaint and Exhibit Cite(s) | Information Demonstrating Defendants' Knowledge That Their Statements And Omissions Were False And Misleading |
|---|---|---|
| | | reported that the Second Bechtel Report revealed that "SCANA and Santee Cooper **knew the effort to construct two nuclear reactors was failing** more than a year before the ambitious energy project was scrapped [in July 2017]." |
| February 2016 Bechtel Report Action Plan | ¶¶ 139-41 | SCANA partner Santee Cooper addressed the materiality of the information contained in the Bechtel Presentation and Reports: "What mitigation effort is required to **defend potential shareholder suit -- Now that SCE&G is specifically aware of problems . . . in [the] report, failure to act may result in O&D [Officers' and Directors'] liability**." <br><br>Santee Cooper indicated that they are bending to "**SCE&G's efforts to avoid disclosure**" of the Second Bechtel Report. |
| Monthly Progress Reports throughout the Class Period; <br><br>Monthly Project Review Meetings; <br><br>Quarterly President's Meetings | ¶¶ 178-79, 183-94 | Westinghouse sent Monthly Progress Reports to Defendants Marsh and Byrne every month through abandonment of the Nuclear Project. These reports were signed off by FE 1, Westinghouse's former Project Director and Consortium Vice President for the entire Nuclear Project, who personally attested to the reports' accuracy and distribution. The data in the Monthly Progress Reports was discussed in Monthly Project Review Meetings attended by Byrne and quarterly President's Meetings attended by Marsh, Byrne and, at times, Addison. <br><br>These reports plainly showed that **monthly construction progress averaged 0.8% throughout the Class Period, a rate of progress that guaranteed completion long after January 1, 2021**. |
| March 4, 2016 Santee Cooper email to | ¶¶ 151-56 | Santee Cooper accepted Bechtel's conclusions and sent Marsh a memorandum (five months after the execution of the EPC Amendment) setting out specific steps that the companies |

4

*In re SCANA Corporation Securities Litigation*, Civ. A. No. 3:17-CV-2616-MBS

**Allegations Demonstrating Defendants' Actual Knowledge**

| Date and Source | Complaint and Exhibit Cite(s) | Information Demonstrating Defendants' Knowledge That Their Statements And Omissions Were False And Misleading |
|---|---|---|
| Defendant Marsh that attached "Santee Cooper Recommendations" following the Bechtel Reports | | needed to take in order to try to save and complete the Nuclear Project. Among other things, Santee Cooper stated that:<br>• Each month of delay cost Santee Cooper an additional $35 million (and likely cost SCANA even more);<br>• "**New project management and leadership are needed to overcome these challenges**," which have "significant impact upon the Owners."<br>• "Considering the Consortium's record, **nearly three years of delays, and the risk associated with not receiving the production tax credits, it is incumbent upon the Owners to employ increased and magnified oversight** to ensure that WEC and Fluor will properly coordinate efforts to resolve the challenges facing the Project."<br>• "**In 2015, only 3.7% direct craft progress (0.31% per month) was earned toward completion of the combined units.** The year closed with overall direct craft construction at 18.7% complete. With 81% of the work to go, the monthly construction progress must increase to around 2.5% if contract dates are to be achieved. **Failure to realize a significant and sustained increase on this metric over the next six months will invariably result in more project delay**." |
| March 7, 2016 and March 11, 2016 Meetings attended by Officer Defendant Marsh and Director Defendant Stowe | ¶¶ 157-60 | Santee Cooper CEO Carter met with Defendant Marsh and "his team" on March 7, 2016 to discuss the Santee Cooper Recommendations, which were attached to the email as preparatory "materials for our Executive Section with the SCANA Board members on March 21, 2016." Carter noted that "[w]e had a long and frank discussion regarding item 5 [concerning getting additional oversight] and the need for management changes to the Project."<br><br>On March 11, 2016, Carter again met with Defendants Marsh, Stowe, and others, during which Carter "emphasized the need to address item 5 and associated Project management changes." In particular, Carter "stressed the need for talent in the area of very large |

5

*In re SCANA Corporation Securities Litigation*, Civ. A. No. 3:17-CV-2616-MBS

**Allegations Demonstrating Defendants' Actual Knowledge**

| Date and Source | Complaint and Exhibit Cite(s) | Information Demonstrating Defendants' Knowledge That Their Statements And Omissions Were False And Misleading |
|---|---|---|
| | | construction projects" who would "report to Kevin [Marsh] and I frequently." <br><br> On March 18, 2018, according to November 2016 SC Nuclear Timeline written by Santee Cooper, Defendant Marsh **rejected Bechtel's and Santee Cooper's recommendation to take action** to ensure immediate improvement on productivity at the Nuclear Project. |
| March 21, 2016 Joint Board meeting, attended by all Individual Defendants: Marsh, Byrne, Addison, Stowe, Roquefort, Hagood | ¶¶ 161-62 <br><br> Ex. I | All of the Individual Defendants attended a joint Board Meeting with the SCANA and Santee Cooper Boards of Directors where the topics of discussion were the **"Bechtel Report, Santee Cooper March 3 formal recommendations and SCANAs [sic] plan forward to address issues**." <br><br> On March 23, 2016, Carter sent a follow-up letter to Defendants Marsh and Stowe, noting that "[t]he discussion between our Boards was frank." |
| May 19, 2016 Meeting between Santee Cooper executives and Defendants Marsh and Byrne, detailed in June 2, 2016 email copied to Defendants Marsh and Byrne | ¶ 164 | Byrne and Marsh attended a May 19 meeting concerning "**the engineering challenges that continue to impede progress on the [Project]**– namely design debt, design constructability, change paper, complex work packages, and emergent issue management." In a June 2, 2016 email following up on that meeting, Santee Cooper stressed that "five months after WEC has had complete control of the Project, there **is little evidence that (WEC) is taking the steps necessary to resolve these challenges and relieve pressure on the substantial completion dates**. Each meeting I attend we continue to report out and discuss the same basic issues **as progress on the critical path continues to slip**." |
| June 20, 2016 Joint Board meeting, attended by Individual | ¶¶ 212-14 <br><br> Ex. J | The two Boards of Directors convene a second time. The Santee Cooper-drafted agenda for this meeting reflects that the first topic of discussion is "**Project Schedule – Summary of Substantial Completion Days**." Also on the agenda was whether it was "SCANA's plan to |

6

*In re SCANA Corporation Securities Litigation*, Civ. A. No. 3:17-CV-2616-MBS

**Allegations Demonstrating Defendants' Actual Knowledge**

| Date and Source | Complaint and Exhibit Cite(s) | Information Demonstrating Defendants' Knowledge That Their Statements And Omissions Were False And Misleading |
|---|---|---|
| Defendants Marsh, Byrne, Addison, and Hagood | | **on-board outside EPC expertise to address [Bechtel] assessment recommendations**." The two Boards also discussed SCANA's analysis of the Fixed Price Option, which SCANA had elected on May 26, 2016. |
| July 13, 2016 email from Santee Cooper CEO Carter to Defendant Marsh, forwarded to Defendant Byrne | ¶ 165 | Santee Cooper CEO Carter directly informed Defendants Marsh and Byrne how **monthly construction progress had not improved** at all since October 2015, continuing at the same dismal 0.5% monthly progress rate observed by Bechtel, which was only one sixth of the necessary 3% monthly rate. Carter explicitly recognized that this ongoing, massive shortfall in progress made it impossible for the Nuclear Project to meet the 2020 completion date:<br>**Through the last 6 months, while the Owners have paid $600 million dollars, construction progress has only been an aggregate of 3% [i.e., 0.5% per month].** Moreover, for the June billing period, had the Owners accepted WEC's milestones and payment schedule, which contained twenty-seven milestones and requested payment of $156 million for the month, only four of the twenty-seven were completed, which would entitle WEC to payment of just $23.1 million. **This rate of progress will never meet the current completion schedule, impacting production tax credits, the availability of cheaper energy for our customers, and bringing the costs of construction to conclusion**. |
| August 2016 "CORB" Report | ¶¶ 166-69 | Nearly one year after Bechtel completed its assessment, CORB, an advisory board assembled after SCANA rejected Santee Cooper's efforts to hire an on-site project manager, confirmed Bechtel's conclusions. The CORB reported that the Nuclear Project "schedules include **significant risks to achieve substantial completion**" and "project schedule uncertainty is **impacting the efficient assignment of oversight resources**." The CORB noted that the schedule had "**slipped 5 months in a 6-month period**," meaning that the Nuclear Project was not progressing at all, and that for every month that passed, the Nuclear Project lost an additional month. |

*In re SCANA Corporation Securities Litigation*, Civ. A. No. 3:17-CV-2616-MBS

**Allegations Demonstrating Defendants' Actual Knowledge**

| Date and Source | Complaint and Exhibit Cite(s) | Information Demonstrating Defendants' Knowledge That Their Statements And Omissions Were False And Misleading |
|---|---|---|
| | | The CORB also highlighted many of the design and engineering problems identified by Bechtel, warning that "[w]ithout improved metrics, **it will be difficult to ensure the Project is and remains on track and to determine when recovery actions need to be identified**." <br><br> The CORB also echoed Bechtel's concerns about the constructability of the Nuclear Project designs, writing that "[t]here is a **growing backlog of constructability issues that are not getting the attention needed to not impact constructability**." |
| November 28, 2016 email from Santee Cooper CEO Carter to Defendant Marsh in advance of December 5, 2016 Joint Board meeting, attended by all Individual Defendants except for Addison and Stowe | ¶¶ 171-73 | In an email sent in advanced of the December 5, 2016 joint Board meeting, Carter attached the SC Nuclear Timeline and identified "primary items" that Marsh, Carter, and their respective teams needed to discuss. Noted in these were (a) a need for "[i]ncreased project management expertise in large scale EPC construction," and (b) an answer as to why there had not been an increase in "project management expertise" in response to the Bechtel Report. <br><br> Santee Cooper stated that "SCANA's project management team . . . **does not have the comprehensive skills and depth of experience necessary in engineering, scheduling, project controls and construction to manage a new build project laced with complexities**." |
| February 14, 2017 Joint Board meeting attended by all Individual Defendants except for Stowe | ¶¶ 174-76 <br><br> Ex. L | A February 13, 2017 memo drafted by Santee Cooper CEO Carter contained "pertinent" facts "as background for the [February 14 Joint Board] meeting." Among those facts to be discussed were the following: (a) SCANA and Santee Cooper deemed the estimate schedule completion dates before the end of 2020 "to be unreliable;" and (b) the monthly progress rate remained at **0.7% per month for the last quarter of 2016, and that only 30.9% of the** |

8

*In re SCANA Corporation Securities Litigation*, Civ. A. No. 3:17-CV-2616-MBS

**Allegations Demonstrating Defendants' Actual Knowledge**

| Date and Source | Complaint and Exhibit Cite(s) | Information Demonstrating Defendants' Knowledge That Their Statements And Omissions Were False And Misleading |
|---|---|---|
| | | **project had been completed to date**. This meant that only 10% of the Nuclear Project had been completed in the 16 months since the start of the Class Period. ¶174. At that rate—10% completion per 16 months—it would take **an additional 9 years**—until **2026**—to complete the Nuclear Project. |
| September 15, 2017 Testimony by Defendants Marsh and Byrne before the House Utility Ratepayer Protection Committee: Briefing on the Content of the Bechtel Report | ¶¶ 113, 130, 177 | Defendant Marsh admitted under oath in 2017 testimony that Bechtel's conclusions were "not news" because Defendants **already knew "the majority" of the things contained within the Bechtel Report before October 2015**. Defendant Byrne similarly testified in September 2017 that "the **issues that were raised by Bechtel had largely been raised by our folks before the Bechtel report**." Byrne also testified that Bechtel detailed "the basics" of the First Bechtel Report during the October 22 Bechtel Presentation. |

9