**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
(COLUMBIA DIVISION)**

| | |
|---|---|
| *In re SCANA Corporation Securities Litigation* | Civil Action No. 3:17-CV-2616-MBS<br><br>CLASS ACTION<br><br>**ORDER RE: AGREED PROTOCOL GOVERNING DISCOVERY MATTERS AND THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI")** |

Lead Plaintiffs the West Virginia Investment Management Board and Stichting Blue Sky Global Equity Active Low Volatility Fund and Stichting Blue Sky Active Large Cap Equity USA Fund (collectively, "Lead Plaintiffs") and Defendants SCANA Corporation ("SCANA" or the "Company"), Kevin B. Marsh, Jimmy E. Addison, Stephen A. Byrne, Harold C. Stowe, D. Maybank Hagood, and James W. Roquemore (collectively, "Defendants," and together with Lead Plaintiffs, the "Parties"), by their undersigned Counsel, hereby agree to the following regarding discovery:

**1.      PURPOSE**

This Stipulated Order Regarding ESI Protocol ("ESI Protocol") will govern the discovery and use of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, any of this Court's Standing Orders regarding ESI, and any other applicable orders or rules. Any disclosures made pursuant to this ESI Protocol are subject to any other Orders entered in this case.

## 2. COOPERATION

The Parties will cooperate on issues relating to the identification, preservation, collection, search, review, production, integrity, and authentication of ESI. The Parties acknowledge that this Court emphasizes the importance of cooperative exchanges of information about ESI at the earliest stages of litigation and commit to working in good faith throughout the matter.

## 3. LIMITATIONS AND NO WAIVER

This ESI Protocol provides a general framework for the production of ESI on a going-forward basis. The Parties and their attorneys do not intend by this protocol to waive their rights to the attorney work-product privilege, except as specifically required herein. Any such waiver shall be strictly and narrowly construed and shall not extend to other matters or information not specifically described herein. All Parties preserve their attorney-client privileges and all other privileges and there is no intent by this ESI Protocol, or the production of documents pursuant to this ESI Protocol, to in any way waive or weaken any privileges. All documents produced hereunder are fully protected and covered by the Protective Order and orders of the Court effectuating same.

## 4. E-DISCOVERY LIAISONS

Each party will identify an E-discovery Liaison who will be primarily responsible for meeting and conferring concerning ESI. Each E-discovery Liaison will, at a minimum:

a. Be knowledgeable about the party's e-discovery efforts;

b. Be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter; and

  c. Be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

  The Parties will rely on the E-Discovery Liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

  **5.** **PRESERVATION**

  The Parties will take reasonable steps to preserve potentially relevant ESI to the extent they have not already done so. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that they shall preserve non-duplicative, relevant information currently in their possession, custody or control. The Parties agree that if a party designates a data source as not reasonably accessible, it shall be assessed using the factors established in Fed. R. Civ. P. 26 (and case law interpreting the same), and shall notify the other Parties of the existence of such data sources.

  Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including, but not limited to, backup tapes, disks, SAN or other forms of media, if this data is unreasonably cumulative or duplicative of other discovery that is being considered for production, in order to comply with its discovery obligations in the present case.

  The Parties agree to meet and confer regarding the types of information that have or will be preserved, the collection process, and any other issues that the Parties anticipate to be considered in this process.

**6.    SEARCH METHODOLOGY**

The Parties recognize that a variety of search tools and methodologies exist and should be considered in an effort to efficiently identify responsive materials in an accurate, complete and defensible manner.

The Parties agree that within 15 days of executing this ESI Protocol, they will discuss and strive to agree upon appropriate search protocols to be used for locating responsive ESI in this litigation. The search protocols will, among other things, include the data sources and custodians each party believes will possess responsive information, propose search terms (if appropriate), and describe any predictive coding/Technology Assisted Review ("TAR") tools and process the party may employ. The search protocols agreed to by the Parties will also describe any sampling/testing procedure a party intends to use to validate its search methodology.

The Parties will in good faith strive to reach agreement as to such procedures and validation statistics. In the unlikely event that the Parties are unable to reach agreement, they will seek the Court's assistance to resolve any areas of dispute.

a.    In the event that the producing party proposes to use search terms, it will identify the terms to be utilized; those terms will be subject to negotiation with and input from the requesting party. This negotiation process will include discussion regarding the exchange of qualitative and quantitative information, including testing and sampling (for example, "hit lists" reflecting the total number of documents that were collected, aggregate and unique hits on a by-custodian and by-term basis, etc.). The Parties acknowledge that in certain instances, search terms and/or search methodologies/parameters (e.g., date ranges, custodians, sources, etc.) may have already been applied for purposes of preservation, collection, and/or productions to others for other purposes (e.g., regulatory inquiry or investigation, merger negotiations, etc.). In such event: The previously used search terms and methodologies/parameters may serve as a base line

from which the Parties will negotiate for purposes of search, collection, and production in this litigation; and

      b.      The Parties agree to meet and confer to determine the extent to which any previously used search terms and methodologies/parameters require modification, if necessary.

The Parties acknowledge that there may be subsequent instances where potential modification to a previously agreed-upon search protocol may be warranted. Should such an instance arise, the Parties agree to meet and confer about methods to search ESI if either party requests such a meet and confer. If a party requests such a meet and confer, the Parties will meet and confer within seven days.

      **7.**      **FORMAT FOR PRODUCTION**

      a.      Hard Copy Documents:

All hard copy documents should be scanned and produced as single-page, Group IV, 300 DPI TIFF images with an image load file (.OPT file and/or .LFP file) and a delimited database/metadata load file (.DAT). The database/metadata load file should contain the metadata fields listed in EXHIBIT A. All documents are to be provided with per document searchable text (.TXT) files that contain full text extraction. In the event a document is scanned into TIFF format, the text file should contain that document's OCR text. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

The documents should be logically unitized (i.e., distinct documents should not be merged into a single record, and a single document should not be split into multiple record) and should be produced in the order in which they are kept in the usual course of business. The text and image load files should indicate page breaks.

If an original document contains color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI, color JPG images with the quality setting 75% or higher. This includes, but is not limited to, color on graphs, charts, presentations, edits, or highlights that were made by hand, or electronically, on the original.

To the extent possible, the producing party shall provide the following metadata from hard copy documents:

1) Production Number Begin

2) Production Number End

3) Production Attachment Range Number Begin

4) Production Attachment Range Number End

5) Confidentiality Designation

6) Production Doc Page Count

7) Custodian

8) Source

9) Volume

b. Electronically Stored Information:

ESI is to be produced in 300 DPI Group IV black and white Tagged Image File Format (.TIFF or .TIF) files. The TIFF files shall be produced in single-page format along with image load files (.OPT file and .LFP file). If an original document contains color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI, color JPG images.

Any document that cannot be converted to TIFF format shall be represented in the production with a placeholder TIFF indicating the document cannot be converted to TIFF along with its corresponding metadata in the Concordance DAT file.

During the process of converting ESI from the electronic format of the application in which the ESI is normally created, viewed and/or modified to TIFF, metadata values should be extracted and produced in the database/metadata load file.

To the extent possible, the metadata values that are to be extracted and produced in the database load files (.DAT file using concordance standard delimiters) are those maintained in the usual course of business, including, but not limited to:

The producing party shall provide the following metadata from email documents:

1) Email Subject

2) Email Author

3) Email Recipients

4) Email CC

5) Email BCC

6) Email Attachment Name

7) Email Received Date: MM/DD/YYYY

8) Email Received Time: HH:MM:SS

9) Email Sent Date: MM/DD/YYYY

10) Email Sent Time: HH:MM:SS

11) Email Importance

12) Time Offset Value (indicate which time zone the data is set to when processed)

13) Record Type

14) Email Conversation Thread Text

The producing party shall provide the following metadata from electronic files:

1) File Name

2) File Author

3) File Title

4) File Manager: Native File Application (e.g., Microsoft Excel, Word, etc.)

5) File Created Date: MM/DD/YYYY

6) File Created Time: HH:MM:SS

7) File Modified Date: MM/DD/YYYY

8) File Last Accessed Date: MM/DD/YYYY

9) File Last Saved By

10) File Extension

11) File Unread

12) Appointment Start Date

13) Appointment Start Time

14) Appointment End Date

15) Appointment End Time

16) Has Hidden Data: Yes or blank (Hidden data refers not only to Excel files with hidden columns, rows, spreadsheets, etc., but also PowerPoint files in which comments or other fields may be hidden.)

To the extent possible, the producing party shall provide the following metadata for both email and electronic files:

1) Production Number Begin

    2)    Production Number End

    3)    Production Attachment Range Number Begin

    4)    Production Attachment Range Number End

    5)    Confidentiality Designation

    6)    Production Doc Page Count

    7)    Custodian

    8)    Volume

    9)    File Path, Original Path or Relative Path.

    10)    File Name

    11)    File Size

    12)    MD5 Hash

    13)    To the extent reasonably available, the "Custodian," "Source," or "Original Path" field with respect to ESI gathered from an individual's hard drive will provide metadata sufficient to identify the individual custodian from whose hard drive such ESI has been gathered.

**8.    SYSTEM FILES EXCLUDED**

Common system and program files as defined by the NIST library (which is commonly used by discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed, or produced.

**9.    FAMILIES OF DOCUMENTS**

For any documents that contain an attachment (e.g., email), to the extent available, the following fields should be produced as part of the metadata load file to provide the parent/child or parent/sibling relationship:

    a.    Production Number Begin

    b.    Production Number End

      c.      Production Attachment Range Number Begin

      d.      Production Attachment Range Number End

      e.      Production Doc Page Count

To the extent a document is part of a "document family" with a combination of responsive, privileged, and/or non-responsive documents, a party will provide a TIFF placeholder for the non-responsive documents. The privileged documents will be numbered and included on the privilege log.

**10.  DEDUPLICATION**

Removal of duplicate documents may be done for exact duplicate documents (based on MD5 or SHA-1 hash values at the parent document level) and may be done across custodians. A party may also deduplicate "near duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message; that all previous emails in the thread reflect full sender, recipient, and date and time stamp information; and provided that the software used to identify these "near-duplicate" threads is able to identify any differences to the thread such as changes in recipients (e.g., side threads, subject line changes), dates, selective deletion of previous thread content by sender, etc. To the extent such differences exist, documents with such differences shall be produced. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate." To the extent that deduplication is used, the Parties expressly agree that a document produced from one custodian's file but not produced from another custodian's file as a result of deduplication will nonetheless be deemed as if produced from that other custodian's file for purposes of deposition, interrogatory, request to admit and/or

trial.[1] The custodian associated with the first copy of a document processed will be considered the primary custodian for that document (the custodian who will be used as the basis for determining which other collected documents are duplicates). After each production, the producing party shall produce an "All Custodian" field listing of every custodian or source who or which possessed a duplicate document.

## 11. HANDWRITTEN NOTES, TRACK CHANGES OR OTHER ALTERATIONS

Any document that contains an alteration, handwritten note, marking on, or addition to the original document shall be treated as a distinct version, and shall be produced as such. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs, edits, highlighting or redlining.

The receiving party may request production of a color copy (in native or otherwise) of a document if it determines that such a color copy will assist in deriving the meaning of the document.

If a document contains track changes and/or comments, the producing party shall image the document showing the tracked changes and/or comments.

## 12. PRODUCTION OF EXCEL, OTHER SPREADSHEETS AND POWERPOINTS

MS-Excel spreadsheets, other spreadsheets and PowerPoint documents should be produced in native format with a TIFF placeholder bearing the legend "Produced in Native File Format." The TIFF image shall be endorsed with a sequential Bates number and the produced native file named to match this Bates number. The metadata load file shall contain a link to the

---

[1] To the extent there is a dispute over whether a duplicate document actually existed in a custodian's files, the Parties will meet and confer as to resolution of that dispute.

produced native file via data values called "Native Link."  The Native Link values should contain the full directory path and file name of the native file as contained in the produced media.

To the extent MS-Excel spreadsheets contain information subject to a claim of privilege, they shall be produced in the form of a redacted TIFF image or in native form with the privileged information natively redacted.  Redactions should be identified.

### 13.     PRODUCTION OF STRUCTURED DATA OR OTHER FILES NOT COVERED

If a database or other source of structured data contains responsive information, the Parties should promptly meet and confer to determine a mutually-agreeable format for production of the responsive data.

### 14.     PASSWORD PROTECTED FILES

The Parties will make reasonable efforts to ensure that all encrypted or password-protected documents and ESI are successfully processed for review and production.  To the extent encrypted or password-protected documents are successfully processed, the Parties have no duty to identify further the prior encrypted status of such documents.  To the extent security protection for such Documents and ESI cannot be successfully processed despite reasonable efforts, the Producing Party shall notify the Requesting Party about such documents and the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms to remove such encryption or password protection with respect to the production of available metadata. When producing such encrypted files, the producing party shall:  (a) produce a slip sheet stating that the documents cannot be decrypted; and (b) provide the metadata required by Exhibit A to the extent it can be reasonably extracted from the file in its encrypted form.

### 15. PRODUCTION OF AUDIO AND VIDEO FILES

If any audio and/or video recordings are responsive, the Parties should meet and confer to determine a mutually-agreeable format for producing the audio and/or video recording. Before meeting and conferring, the producing party will have information sufficient to identify responsive audio and/or video recordings.

### 16. BATES NUMBERING AND CONFIDENTIALITY DESIGNATION

Bates number and any confidentiality designation should be electronically branded on each produced TIFF image of ESI but should not be included in the extracted text of ESI. For documents produced in native format, the Bates ranges or beginning Bates number of the TIFF images of those documents shall be provided.

### 17. REDACTIONS

Each redaction on a document shall be endorsed with the word "Redacted" or "Redaction," with that word being included in the text provided for the document. Alternatively, the producing party may produce a field in the DAT file denoting which documents contain redactions.

### 18. PRIVILEGE LOGS

The Parties will provide a log of all documents withheld on the basis of privilege, work product protection, or other privilege. For electronic documents, each party may opt at its own discretion to create privilege logs using one of the following methods. For hard copy documents, each party shall create privilege logs using the standard privilege log.

1. Automated Log. An automated privilege log will be generated from the following metadata fields, to the extent they exist, as electronic metadata associated with the original electronic documents.

   a. SUBJECT

13

    b.    FILE NAME

    c.    AUTHOR

    d.    SENDER/FROM

    e.    RECIPIENTS/TO

    f.    CC

    g.    BCC

    h.    SENT DATE TIME

    i.    RECEIVED DATE TIME

    j.    FILE CREATED DATE TIME

    k.    FILE LAST MODIFIED DATE TIME

    l.    BEG BATES

    m.    END BATES

    n.    BEG ATTACH BATES

    o.    END ATTACH BATES

Additional fields to be populated manually and included on the Automated log:

    a.    PRIVILEGE TYPE (AC, WP or other)

    b.    REDACTED (a field indicating whether the document has been produced with redactions)

    c.    COUNSEL (a field indicating who and where counsel is present in a conversation, if not readily ascertainable from the other fields provided)

With respect to the SUBJECT OR FILENAME fields, the producing party may substitute a description of the communication where the content of these fields may reveal privileged information, but must indicate that the fields have been revised. Should the receiving party in

good faith have reason to believe a particular entry on the Automated Log does not reflect a privileged document, it may request a Standard Log for that entry, to be produced within two weeks of the request, or within such other reasonable time as the parties may agree or the Court may order.

       2.      Standard Log.  A standard privilege log will include these standard fields: beg bates; end bates; author/sender/from; recipients/to; cc; bcc; date; subject; file name; privilege type; redacted; an indication of counsel in the document and a description sufficient to identify the subject of the document and the basis for the privilege assertion.  The privilege log fields for email strings will contain the information from the top email in the email string.  The Parties shall also populate a field with all other participants identified on the face of the document not already captured in the top email of the email string.  Other participants need only be identified for the email strings which are withheld as entirely privileged.

Privilege logs shall be provided in searchable Microsoft Excel format.

Privilege logs shall be produced on a rolling basis 30 days after each document production, and shall be produced in such a manner that each log should contain all previous logs, such that each log can supersede all prior logs.

Documents presumptively not to be logged on a privilege log include:

       a.      Communications exclusively between a party or its representative(s) and its trial counsel after the commencement of the Action; and/or

       b.      Work product created by trial counsel, an agent of trial counsel, or a party at the direction of trial counsel, after commencement of the Action.

### 19. MODIFICATION

This ESI Protocol may be modified by a stipulated order of the Parties or by the Court for good cause shown.

**IT IS SO ORDERED.**


                                            /s/ Margaret B. Seymour
                                            Senior United States District Judge


Columbia, South Carolina

August 9, 2019

# EXHIBIT A

## METADATA FIELDS

| Field Name | Description | Example / Format |
|---|---|---|
| **PRODBEG** | The Document ID number of first page of the document. | ABC0000001 |
| **PRODEND** | The Document ID number of the last page of a document. | ABC0000003 |
| **BEGATTACH** | The Document ID number of the first page of the parent document. | ABC0000001 |
| **ENDATTACH** | The Document ID number of the last page of the last attachment. | ABC0000008 |
| **CONFIDENTIALITY DESIGNATION** | The level of confidentiality assigned to the document by Counsel | Confidential, Highly Confidential, AEO |
| **PGCOUNT** | The number of pages in a document. (image records) | Numeric |
| **CUSTODIAN** | All of the custodians / sources of a document from which the document originated. | Smith, Joe; Doe, Jane |
| **SOURCE** | Location where hard documents were found at time of collection. | Joe Smith Office; HR File Room |
| **VOLUME** | The name of the CD or Hard Drive for ESI, or collection, binder, cabinet for hard copy docs. | VOL0001 |
| **RECORD TYPE** | The type of document / record. | Email, hard copy, loose eFile |
| **EMAIL SUBJECT** | The subject line of the e-mail. | |
| **EMAIL AUTHOR / FROM** | The display name and e-mail of the author of an e-mail. | Joe Smith <jsmith@email.com> |
| **EMAIL RECIPIENTS / TO** | The display name and e-mail of the recipient(s) of an e-mail. | Joe Smith <jsmith@email.com>; tjones@email.com |
| **EMAIL CC** | The display name and e-mail of the copyee(s) of an e-mail. | Joe Smith <jsmith@email.com>; tjones@email.com |
| **EMAIL BCC** | The display name and e-mail of the blind copyee(s) of an e-mail. | Joe Smith <jsmith@email.com>; tjones@email.com |
| **EMAIL ATTACHMENT COUNT** | The number of attachments to a parent. | Numeric |
| **EMAIL ATTACHMENT NAME** | The original file name of attached record. | Attach1.doc |
| **RECEIVEDDATE** | The date the document was received. | MM/DD/YYYY |
| **RECEIVED TIME** | The time the document was received. | HH:MM |

| Field Name | Description | Example / Format |
|---|---|---|
| **SENT DATE** | The date the document was sent. | MM/DD/YYYY |
| **SENT TIME** | The time the document was sent. | HH:MM |
| **EMAIL IMPORTANCE** | E-mail Importance Flag. | Normal, Low, High |
| **EMAIL CONVERSATION INDEX / THREAD TEXT** | ID used to tie together e-mail threads. | 01C72AC4C |
| **TIME OFFSET VALUE / TIMEZONE PROCESSED** | The time zone that the data is set to when processed. NOTE: This should be the time zone where the documents were located at time of collection. | PST, CST, EST, etc. |
| **FILE NAME** | The file name of a native document. | Document Name.xls |
| **FILE AUTHOR** | The author of a document from extracted metadata. | jsmith |
| **DOC TITLE** | The extracted title of the document. | Table of Contents |
| **FILE MANAGER / APPLICATION DESCRIPTION** | Native file application. | Microsoft Excel, Word, etc. |
| **FILE EXTENSION** | The file extension of a document. | XLS |
| **HIDDEN DATA** | Whether hidden exists in the doc. For example, hidden Excel cells or PowerPoint slides. | Y,N,Blank |
| **FILE CREATE DATE** | The date the document was created. | MM/DD/YYYY |
| **FILE CREATE TIME** | The time the document was created. | HH:MM |
| **FILE LAST MODIFICATION DATE** | The date the document was last modified. | MM/DD/YYYY |
| **FILE LAST ACCESS DATE** | The date the document was last accessed. | MM/DD/YYYY |
| **FILE LAST SAVED BY** | The last individual to save the file. | jsmith |
| **FILE LAST EDITED BY** | The name of the last person to edit the document from extracted metadata. | jsmith |
| **FILE UNREAD** | Y if an e-mail is unread, N if read, and blank for attachments and non-e-mail documents. | Y, N |
| **DATE APPOINTMENT START** | Date of calendar appointment entry. | MM/DD/YYYY |

| Field Name | Description | Example / Format |
|---|---|---|
| **TIME APPOINTMENT START** | Start time of calendar appointment entry. | HH:MM |
| **DATE APPOINTMENT END** | End date of calendar appointment entry | MM/DD/YYYY |
| **TIME APPOINTMENT END** | End time of calendar appointment entry. | HH:MM |
| **FILESIZE** | The file size of a document (including embedded attachments). | Numeric |
| **FILE PATH / ORIGINAL PATH** | Location of the original document / location in the ordinary course of business. This field should be populated for email and e-files. | Joe Smith/E-mail/Inbox Joe Smith/E-mail/Deleted Items |
| **MD5HASH** | The MD5 Hash value or de-duplication key assigned to a document. | |
| **NATIVELINK** | The full path to a native copy of a document. | D:\NATIVES\ABC000001.xls |
| **FULLTEXT** | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. | D:\TEXT\ABC000001.txt |