# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### (COLUMBIA DIVISION)

| | |
|---|---|
| *In re SCANA Corporation Securities Litigation* | Civil Action No. 3:17-CV-2616-MBS |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT AND AUTHORIZING <u>DISSEMINATION OF NOTICE OF SETTLEMENT</u>

Marlon E. Kimpson (D.S.C. Bar No. 7487)
William S. Norton (D.S.C. Bar No. 11343)
Joshua C. Littlejohn (D.S.C. Bar No. 10426)
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, South Carolina 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

*Liaison Counsel for Lead Plaintiffs West Virginia IMB and Blue Sky*

James W. Johnson *(admitted pro hac vice)*
Michael H. Rogers *(admitted pro hac vice)*
Irina Vasilchenko *(admitted pro hac vice)*
James Christie *(admitted pro hac vice)*
Philip J. Leggio *(admitted pro hac vice)*
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

John C. Browne *(admitted pro hac vice)*
Jeroen Van Kwawegen *(admitted pro hac vice)*
Lauren Ormsbee *(admitted pro hac vice)*
Michael M. Mathai *(admitted pro hac vice)*
Kate W. Aufses *(admitted pro hac vice)*
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Co-Lead Counsel for Lead Plaintiffs West Virginia IMB and Blue Sky and Proposed Lead Counsel for the Class*

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND .........................................2

    A.    Lead Plaintiffs Embark on an Extensive Investigation and File Their
        Complaint.........................................................................................................3

    B.    Defendants' Motions to Dismiss Are Largely Denied....................................4

    C.    The Parties Commence Formal Discovery ....................................................6

    D.    Lead Plaintiffs Move for Class Certification ...............................................6

    E.    The Parties' Settlement Negotiations............................................................7

    F.    Terms of the Proposed Settlement ...............................................................8

III.  ARGUMENT.....................................................................................................10

    A.    The Court Should Grant Preliminary Approval of the Proposed
        Settlement ...................................................................................................11

        1.    The Settlement Is the Product of Good-Faith, Arm's-Length
            Negotiations Among Experienced Counsel and a Mediator...............13

        2.    The Proposed Settlement Falls Well Within the Range of
            Approval .........................................................................................15

        3.    The Settlement Treats All Settlement Class Members Fairly............17

        4.    The Settlement Does Not Excessively Compensate Plaintiffs'
            Counsel ...........................................................................................19

    B.    The Proposed Settlement Class Satisfies Rule 23.......................................20

        1.    The Settlement Class Satisfies the Requirements of Rule 23(a).........20

            (a)    The Settlement Class Is So Numerous that Joinder Is
                Impracticable.........................................................................21

            (b)    There Are Common Questions of Law and Fact ......................21

            (c)    Lead Plaintiffs' Claims Are Typical of Those of the
                 Settlement Class.....................................................................22

(d)   Lead Plaintiffs Will Adequately Represent the Settlement Class ......................................................................... 23

2.   The Settlement Class Satisfies Fed. R. Civ. P. 23(b)(3) .................................. 24

C.   THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS ......................................................................... 25

D.   PROPOSED SCHEDULE OF EVENTS .................................................................. 27

IV.   CONCLUSION ........................................................................................................ 28

## **TABLE OF AUTHORITIES**

**Cases**                                                                              **Page(s)**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997).........................................................................................................20, 24

*In re BearingPoint, Inc. Sec. Litig.,*
232 F.R.D. 534 (E.D. Va. 2006) ..................................................................................................24

*In re Career Educ. Corp. Sec. Litig.,*
No. 03 C 8884, 2008 WL 8666579 (N.D. Ill. June 26, 2008) ..................................................26

*Central Wesleyan Coll. v. W.R. Grace & Co.,*
143 F.R.D. 628 (D.S.C. 1992) (Blatt, J.),
*aff'd* 6 F.3d 177 (4th Cir. 1993)...................................................................................................21

*In re Delphi Corp. Sec. Derivative & ERISA Litig.,*
248 F.R.D. 483 (E.D. Mich. 2008) ..........................................................................................13

*Epstein v. World Acceptance Corp.,*
No. 6:14-cv-01606-MGL, 2017 WL 11461887 (D.S.C. Dec. 18, 2017)..................................19

*In re Genworth Fin. Sec. Litig.,*
210 F. Supp. 3d 837 (E.D. Va. 2016) .......................................................................................19

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
855 F. Supp. 825 (E.D.N.C. 1994)...........................................................................................11

*In re Jiffy Lube Sec. Litig.,*
927 F.2d 155 (4th Cir. 1991) ....................................................................................................13

*KBC Asset Mgmt. NV v. 3D Sys. Corp.,*
No. 0:15-CV-02393-MGL, 2017 WL 4297450 (D.S.C. Sept. 28, 2017) ................................23

*KBC Asset Mgmt. NV v. 3D Sys. Corp.,*
No. 0:15-CV-02393-MGL, 2018 WL 3105072 (D.S.C. June 25, 2018) ................................19

*Kirven v. Cent. States Health & Life Co. of Omaha,*
No. 3:11-CV-2149-MBS, 2014 WL 12734325 (D.S.C. Dec. 12, 2014) ...........................12, 15

*Kirven v. Cent. States Health & Life Co. of Omaha,*
No. CA 3:11-2149-MBS, 2015 WL 1314086 (D.S.C. Mar. 23, 2015) ...................................12

*In re LandAmerica §1031 Exch. Servs., Inc. IRS §1031 Tax Deferred Exch. Litig.,*
2012 WL 13124593 (D.S.C. July 12, 2012) .............................................................................11

*In re Mills Corp. Sec. Litig.,*
257 F.R.D. 101 (E.D. Va. 2009) ...............................................................................................21

*In re NeuStar Inc. Sec. Litig.*,
  No. 14CV885, 2015 WL 5674798 (E.D. Va. Sept. 23, 2015) .....................................14, 20, 22

*In re NII Holdings, Inc. Sec. Litig.*,
  311 F.R.D. 401 (E.D. Va. 2015) ....................................................................................21, 23

*Reed v. Big Water Resort, LLC*,
  No. 2:14-cv-01583-DCN, 2016 WL 374816 (D.S.C. Feb. 1, 2016)......................................11

*Ret. Sys. v. Sonoco Prods. Co.*,
  270 F.R.D. 247 (D.S.C. 2010) ...........................................................................22, 23, 24, 25

*S.C. Nat'l Bank v. Stone*,
  139 F.R.D. 335 (D.S.C. 1991) ........................................................................................13, 15

*In re SCANA Corp. Sec. Litig.*,
  No. 3:17-2616-MBS, 2019 WL 1427443 (D.S.C. Mar. 29, 2019) ...........................................5

*Simpson v. Specialty Retail Concepts*,
  149 F.R.D. 94 (M.D.N.C. 1993) ...........................................................................................22

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
  No. 3:08-cv-00271-JFA, 2012 WL 13008138 (D.S.C. July 31, 2012)...................................12

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
  No. 3:08-cv-00271-JFA, 2012 WL 4061537 (D.S.C. Sept. 14, 2012) ...................................13

*In re The Mills Corp. Sec. Litig.*,
  265 F.R.D. 246 (E.D. Va. 2009) ...........................................................................14, 15, 19, 20

*Thomas v. FTS USA, LLC*,
  312 F.R.D. 407 (E.D. Va. 2016) ...........................................................................................21

**Statutes and Rules**

15 U.S.C. § 78u-4(a)(7) ...........................................................................................................25

15 U.S.C. § 78u-4(e) ...............................................................................................................18

Class Action Fairness Act, 28 U.S.C. § 1715 (2005) ................................................................26

Fed. R. Civ. P. 23 ........................................................................................................... *passim*

Fed. R. Civ. P. 30(b)(6)..............................................................................................................7

James Wm. Moore, *Moore's Federal Practice* §23.83[1] (3d ed. 2002) .....................................12

William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2017)..............................................20

Lead Plaintiffs the West Virginia Investment Management Board ("West Virginia IMB") and Stichting Blue Sky Global Equity Active Low Volatility Fund and Stichting Blue Sky Active Large Cap Equity USA Fund ("Blue Sky") (collectively, "Lead Plaintiffs" or "Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion for entry of the Parties' agreed-upon proposed Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement ("Preliminary Approval Order" or "PAO").[1]

## I.     INTRODUCTION

The Parties have reached an agreement to settle all claims in this securities class action (the "Action"), and related claims, in exchange for a payment of $192,500,000—with $160,000,000 paid in cash and $32,500,000 paid in freely-tradable Dominion Energy, Inc. ("Dominion Energy")[2] common stock, or cash at the option of SCANA. This Settlement would be the largest securities class action recovery in the District of South Carolina, the fifth largest securities class action recovery in the Fourth Circuit, and among the top 100 securities class action recoveries nationwide. The proposed Settlement warrants the Court's preliminary approval because it represents a highly favorable result for the Settlement Class and was the culmination of extensive arm's-length negotiations overseen by a well-respected mediator. It also satisfies all the approval factors required by Rule 23(e) of Federal Rules of Civil Procedure ("Rule" or "Rules") and Fourth Circuit precedent.

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated December 20, 2019 (the "Stipulation"), which is attached as Exhibit 1 to the present motion (the "Preliminary Approval Motion"). The proposed Preliminary Approval Order is attached as Exhibit 2 to the Preliminary Approval Motion.

[2] Dominion Energy merged with Defendant SCANA Corporation ("SCANA" or the "Company") effective January 2, 2019, upon which SCANA common stock was converted into Dominion Energy common stock.

Entry of the proposed Preliminary Approval Order (Exhibit 2 to the Preliminary Approval Motion) will begin the final approval process for the proposed Settlement, which is governed by Rule 23 and relevant case law.  The PAO authorizes the dissemination of notice of the Settlement to investors who are believed to be members of the Settlement Class.  The PAO also contemplates scheduling a final approval hearing (the "Settlement Hearing") for the Parties to present arguments for the Settlement, and for Settlement Class Members to also present any arguments for or against the Settlement should they choose to do so.  Following the Settlement Hearing, the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate.

To facilitate this process, the proposed Preliminary Approval Order: (i) preliminarily approves the Settlement on the terms set forth in the Stipulation; (ii) approves the form and content of the Notice, Claim Form, and Summary Notice attached as Exhibits 1, 2, and 3 to the Preliminary Approval Order; (iii) finds that the procedures for distribution of the Notice and Claim Form and publication of the Summary Notice comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (iv) sets a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the proposed Plan of Allocation for distributing the proceeds of the Settlement, and Lead Counsel's application for attorneys' fees and expenses, including any request for reimbursement of Lead Plaintiffs' costs and expenses under the PSLRA.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Beginning in September 2017, certain related class actions[3] were filed in the United States District Court for the District of South Carolina (the "Court") alleging violations of the federal

---

[3] *Norman v. SCANA Corporation et al.*, No. 3:17-CV2616-MBS; *Evans v. SCANA Corporation et al.*, No. 3:17-cv-02683-MBS*; Fox v. SCANA Corporation et al.*, No. 3:17-cv-03063-MBS; and *West Palm Beach Firefighters' Pension Fund v. SCANA Corporation et al.*, No. 3:17-cv-03141-MBS.

securities laws.  By Order dated January 23, 2018, the Court: (i) consolidated the related actions into this lead Action, which was then captioned "*In re SCANA Corporation Securities Litigation*" and maintained under File No. 3:17-CV-2616-MBS; (ii) appointed West Virginia IMB and Blue Sky as Lead Plaintiffs; and (iii) approved Bernstein Litowitz Berger & Grossmann LLP and Labaton Sucharow LLP as Lead Counsel. Following their appointment, and as discussed below, Lead Plaintiffs conducted an extensive investigation that resulted in the filing of the March 30, 2018 Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act.  Following the filing of the Complaint, the parties engaged in, *inter alia*: (a) voluminous briefing and oral argument on Defendants' motions to dismiss, which the Court largely denied; (b) extensive informal and formal document discovery of Defendants, Lead Plaintiffs, and third party investment managers of Lead Plaintiffs; (c) briefing on Lead Plaintiffs' motion for class certification and appointment of Class Representatives and Class Counsel; (d) depositions of both Lead Plaintiffs, Lead Plaintiffs' class certification expert, and four non-party investment managers; and (e) extensive mediation negotiations spanning several months and involving the exchange of several mediation statements.

### A. Lead Plaintiffs Embark on an Extensive Investigation and File Their Complaint

Beginning no later than January 2018, Lead Plaintiffs engaged in extensive investigation and discovery efforts to support the allegations in the Complaint and to prepare for depositions and formal discovery.  For example, Lead Plaintiffs issued numerous requests for documents to a South Carolina regulator, the Office of Regulatory Staff ("ORS"), South Carolina newspapers, and Santee Cooper, South Carolina's state-owned electric and water utility that was SCANA's junior

partner on the Project, pursuant to the South Carolina Freedom of Information Act ("FOIA").  Prior to filing the Complaint on March 30, 2018, Lead Plaintiffs received and reviewed 1,513 documents (totaling 16,560 pages), and used information from these documents in support of the allegations in the Complaint.  In addition, as part of their investigation for the allegations in the Complaint, Lead Plaintiffs contacted 200 former employees of SCANA and its lead contractors on the Project and interviewed 69 of them (two of whom were relied on in the Complaint).

Among other things, the Complaint alleged that Defendants made materially false and misleading statements and omissions with respect to SCANA's effort to build two nuclear reactors at the V.C Summer nuclear generating station near Jenkinsville, South Carolina (the "Project"). In particular, the Complaint alleged that Defendants misrepresented the status and their oversight of the Project, including by assuring investors that the Project was on schedule and on budget, making significant progress towards completion, and was being managed prudently and transparently by Defendants.  According to the Complaint, such statements were false and misleading because Defendants allegedly knew from the start of the Class Period that the Project was not realistically going to be completed by the end of 2020, as planned, allegedly due in large part to Defendants' deficient oversight.  The Complaint further alleged that the price of SCANA common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements and omissions and declined when the truth was revealed through a series of partial corrective disclosures.

**B.  Defendants' Motions to Dismiss Are Largely Denied**

On June 4, 2018, Defendant SCANA, together with the Director Defendants, and Defendants Marsh, Addison, and Byrne filed four separate motions to dismiss the Complaint.  On August 9, 2018, Lead Plaintiffs filed their omnibus memorandum of law in opposition to the motions to dismiss, and, on September 18-19, 2018, Defendants filed their reply memoranda.

4

Defendants' principal arguments were that Lead Plaintiffs failed to allege actionable misstatements or omissions, including in that they were protected by the PSLRA safe harbor, were immaterial puffery, and/or were inactionable opinions; that Lead Plaintiffs failed to allege that Defendants acted with fraudulent intent (or "scienter"); and that the partial disclosures of negative information that Lead Plaintiffs had alleged caused SCANA's stock price declines and class members' losses did not sufficiently relate to the alleged fraud.

On March 4, 2019, the Court heard oral argument on Defendants' motions to dismiss.  On March 29, 2019, the Court entered its Opinion and Order denying Defendants' motions to dismiss the Complaint, except that the Court granted the motions to the extent they sought dismissal based on claims for violation of Item 303 (the "MTD Opinion").  Based on the well-pled allegations of the Complaint, the Court rejected Defendants' arguments that the allegedly false and misleading statements and omissions were protected by the safe harbor provision of the PSLRA, or otherwise constituted inactionable opinion or puffery.  *In re SCANA Corp. Sec. Litig.*, No. 3:17-2616-MBS, 2019 WL 1427443, at *7-9 (D.S.C. Mar. 29, 2019). The Court further found that the Complaint adequately pled scienter, as follows:

> The court finds the amended complaint plausibly demonstrates that Individual Defendants acted at least recklessly and possibly deliberately. Plaintiffs' amended complaint catalogs allegations of contemporaneous presentations, reports, analyses, and correspondence that individually and collectively informed Defendants that their public statements concerning the status of the Project were materially false and misleading when made.

*Id.* at *11.  The Court also found that the allegations adequately pled loss causation (*id.* at *12) and sustained the Complaint's Section 20(a) control person liability claims against the Individual Defendants (*id.*).

C.    **The Parties Commence Formal Discovery**

As noted above, Lead Plaintiffs received and reviewed over 1,500 documents (totaling over 16,500 pages) prior to filing their Complaint.  Lead Plaintiffs then received and reviewed an additional 230,778 documents (totaling nearly 1.7 million pages) through FOIA requests in 2019.  In total, Lead Plaintiffs received and reviewed 244,233 documents (totaling 1,836,743 pages) through FOIA requests prior to the start of formal discovery.  Further, as part of its investigation, Lead Plaintiffs obtained and reviewed numerous deposition and hearing transcripts by SCANA current and former employees and third-party witnesses from related proceedings against SCANA, including from the regulatory action brought by the ORS and other entities before the South Carolina Public Service Commission.

Formal discovery in the Action commenced in June 2019.  Lead Plaintiffs promptly served document requests on Defendants at that time.  After extensive meet and confer negotiations, Defendants produced 565,507 documents, totaling 5,215,238 pages, to Lead Plaintiffs in September 2019.  Defendants also served document requests and interrogatories on Lead Plaintiffs.  Following meet and confer negotiations, Lead Plaintiffs produced 2,120 documents, totaling 146,963 pages, to Defendants in July-August of 2019.  In addition, Lead Plaintiffs' four non-party investment managers, who purchased and/or sold SCANA common stock on Lead Plaintiffs' behalves during the Class Period, produced an additional 677 documents, totaling 11,260 pages.  In total, 568,304 documents, totaling 5,373,561 pages, were produced by the parties and third parties in formal discovery.

D.    **Lead Plaintiffs Move for Class Certification**

On June 28, 2019, Lead Plaintiffs filed their motion for class certification and appointment of class counsel, which was accompanied by a report from Lead Plaintiffs' expert on market efficiency and common damages methodologies, Chad Coffman.  Between August 8, 2019 and

September 20, 2019, Defendants noticed and took the depositions of 7 individuals: (a) a representative from West Virginia IMB and Blue Sky, respectively, pursuant to Fed. R. Civ. P. 30(b)(6); (b) Chad Coffman; and (c) four representatives from Lead Plaintiffs' investment managers relevant to this Action.  On September 25, 2019, Defendants filed their opposition to Lead Plaintiffs' motion for class certification and appointment of class counsel, which was accompanied by a report from Defendants' expert, Christopher James, Ph.D., in response to Mr. Coffman's expert report.

      **E.    The Parties' Settlement Negotiations**

Lead Plaintiffs and Defendants began exploring the possibility of a settlement in February 2019.  Specifically, the Parties agreed to engage in private mediation and subsequently retained retired United States District Court Judge Layn R. Phillips to act as mediator in the case.  On May 17, 2019, Lead Counsel and Defendants' Counsel, among others, participated in a full-day mediation session before Judge Phillips.  In advance of that session, the Parties exchanged and submitted to Judge Phillips detailed opening and reply mediation statements, together with numerous supporting exhibits, which addressed both liability and damages issues.  Over the course of the May 17, 2019 mediation session, Judge Phillips engaged in extensive discussions with the Parties and their counsel and Defendants' insurance carriers in an effort to find common ground between the Parties' respective positions.  The session ended without any agreement being reached.

The Parties continued settlement discussions with Judge Phillips following the May 17 session, but were unable to reach agreement. The Parties participated in a second mediation session before Judge Phillips on October 2, 2019.  In advance of that session, the Parties again exchanged supplemental opening and reply mediation statements and further exhibits, which were also submitted to Judge Phillips.  Once again, over the course of the October 2, 2019 mediation

sessions, Judge Phillips engaged in extensive discussions with the Parties and their counsel and Defendants' insurance carriers in an effort to find common ground between the Parties' respective positions. Ultimately, at the end of the second mediation session, the Parties reached an agreement in principle to settle the Action, which was memorialized in a term sheet executed and finalized on October 3, 2019 (the "Term Sheet"). The Term Sheet set forth, among other things, the Parties' agreement to settle and release claims against Defendants in return for a payment of $192,500,000.00—with $160,000,000 paid in cash and $32,500,000 paid in freely-tradable Dominion Energy common stock, or cash at the option of SCANA. This proposed Settlement represents the largest securities class action recovery ever in the District of South Carolina.

### F.    Terms of the Proposed Settlement

The Parties entered into the Stipulation on December 20, 2019, *see* Exhibit 1 to the Preliminary Approval Motion, which sets forth the terms and conditions of the Settlement. The Settlement provides that SCANA will pay or cause to be paid $160 million in cash and $32.5 million paid in freely-tradable Dominion Energy common stock, or cash at the option of SCANA (the "Settlement Amount").[4] Pursuant to the Stipulation, the $160 million Cash Settlement Amount shall be paid into an interest-bearing escrow account no late than twenty (20) business days after the later of (i) the date of entry by the Court of an order preliminarily approving this Settlement, or (ii) the date that Lead Counsel provides Defendants' Counsel with written payment instructions, including a valid W-9 for the Settlement Fund. *See* Stipulation ¶ 9. Also pursuant to the Stipulation, the $32.5 million in Settlement Shares shall be issued and delivered to the

---

[4] Pursuant to the terms of the Stipulation, the Settlement Shares may be issued in reliance upon the exemption from registration provided by Section 3(a)(10) of the Securities Act, based on this Court's approval of the Settlement. Also, Defendants have the option to pay the $32,500,000.00 value of the Settlement Shares, or any part thereof, in cash of the same value at any point prior to the delivery of the Settlement Shares.

Securities Brokerage Account established by Lead Plaintiffs no later than ten (10) business days after the date of entry by the Court of the judgment finally approving the Settlement. *Id.* ¶ 10.[5]

The Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and Litigation Expenses awarded by the Court, Taxes, Notice and Administration Costs, and any other costs or fees approved by the Court (the "Net Settlement Fund"), will be distributed among eligible Settlement Class Members who submit valid Claim Forms ("Authorized Claimants"), in accordance with a plan of allocation to be approved by the Court (discussed in more detail below).

Under the Settlement, the Parties have agreed to the certification of the Settlement Class for settlement purposes only. The proposed Settlement Class consists of: all persons and entities who or which purchased or otherwise acquired publicly traded SCANA common stock during the period from October 27, 2015 through December 20, 2017, inclusive, and were damaged thereby. *See* Stipulation ¶ 1(ccc).[6] As discussed below, the proposed Settlement Class satisfies the requirements of Rules 23(a) and 23(b)(3), and it is likely that the Court will ultimately decide, at or after the Settlement Hearing, that the Settlement Class should be certified for purposes of the proposed Settlement.

---

[5] Provided that no Dominion Energy shareholder approval is required to issue the Settlement Shares (and such approval is not anticipated), the number of Settlement Shares that Dominion Energy shall issue will be determined on the date of entry of the judgment finally approving the Settlement (the "Valuation Date") and will be calculated by dividing $32,500,000.00 by the average daily adjusted closing price of Dominion Energy common stock over the five (5) trading days immediately preceding the Valuation Date. *See* Stipulation ¶ 10(a).

[6] Excluded from the Settlement Class are: (i) Defendants and Dominion Energy; (ii) the Immediate Family members of the Individual Defendants; (iii) the Officers and Directors of SCANA during the Class Period and their Immediate Family members; (iv) any parents, subsidiaries, or affiliates of SCANA; (v) any firm, trust, corporation, or other entity in which any Defendant has, or had during the Class Period, a controlling interest; and (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person or entity. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court. *Id.*

The Parties have also entered into a confidential Supplemental Agreement, dated December 20, 2019. *See* Stipulation ¶ 42(b).  The Supplemental Agreement sets forth the conditions under which SCANA may terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain amount (the "Opt-Out Threshold").  As is standard in securities class actions, such agreements are not made public in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Opt-Out Threshold to exact an individual settlement.  Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera*.  The Supplemental Agreement, Stipulation, and Term Sheet (which has been superseded by the Stipulation) are the only agreements concerning the Settlement entered into by the Parties.

If the Settlement receives the Court's final approval, Settlement Class Members will release the "Released Plaintiffs' Claims" in exchange for the Settlement Amount.  *See* Stipulation ¶ 1(vv).  The release's scope is reasonable as it is limited to claims related to the purchase of SCANA common stock *and* to the Complaint's factual allegations.  *Id.*  Further, the proposed Settlement does not release claims asserted in any ERISA, derivative, or ratepayer actions, nor does it release any claims against any outside or independent auditors or accountants of any Defendant or of Dominion Energy.  *Id.* ¶¶ 1(t), 1(aa).

## III.    ARGUMENT

The Settlement warrants preliminary approval because of the significant benefit achieved for the Settlement Class, the substantial costs and risks that would otherwise be associated with continued prosecution of the Action, and the fact that the proposed Settlement is the result of arm's-length negotiations by experienced counsel overseen by an experienced mediator.

## A.    The Court Should Grant Preliminary Approval of the Proposed Settlement

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. In determining whether to approve the Settlement, the Court should be guided by the principle that "[t]here is a strong judicial policy in favor of settlements, particularly in the class action context." *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 WL 374816, at *3 (D.S.C. Feb. 1, 2016). "'The voluntary resolution of litigation through settlement is strongly favored by the courts' and is 'particularly appropriate' in class actions." *In re LandAmerica §1031 Exch. Servs., Inc. IRS §1031 Tax Deferred Exch. Litig.*, MDL No. 2054, 2012 WL 13124593, at *4 (D.S.C. July 12, 2012) (*quoting S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990)).

District court review of a proposed class action settlement is a two-step process. In the first stage, a court provides preliminary approval of the settlement, pending a final settlement hearing, certifies the class for settlement purposes, and authorizes notice of the settlement to be given to the class. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). "First, the court conducts a preliminary approval or pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval' or, in other words, whether there is 'probable cause' to notify the class of the proposed settlement. Second, assuming that the court grants preliminary approval and notice is sent to the class, the court conducts a 'fairness' hearing, at which all interested parties are afforded an opportunity to be heard on the proposed settlement." *Id*.; *see also Manual for Complex Litig.* (4th) ¶21.632 (2004) ("The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). The first stage of settlement is the posture of the Motion currently before the Court.

Effective December 1, 2018, Congress amended Rule 23(e) to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class given the likelihood that the court will be able to finally approve the settlement and certify the class.  Rule 23(e)(1)(B).[7]  "Preliminary approval of a class action settlement should be granted when the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or of segments of the class or excessive compensation for attorneys and appears to fall within the range of possible approval." *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 WL 13008138, at *5 (D.S.C. July 31, 2012).

At the preliminary approval stage, the court is not required to answer the ultimate question of whether the settlement is fair, reasonable, and adequate. *See* 5 James Wm. Moore, *Moore's Federal Practice* §23.83[1], at 23-336.2 to 23-339 (3d ed. 2002). Rather, "[o]n [a] motion for preliminary approval, the court's function is merely to ascertain whether there is 'probable cause' to notify class members of the proposed settlement and proceed with a fairness hearing." *Kirven v. Cent. States Health & Life Co. of Omaha*, No. 3:11-CV-2149-MBS, 2014 WL 12734325, at *8

---

[7]  At the final Settlement Hearing, the Court will have before it extensive papers submitted in support of the Settlement and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate, under all of the circumstances.  Final approval will involve analysis of the following factors from amended Rule 23(e)(2): (a) whether Lead Plaintiffs and Lead Counsel adequately represented the Settlement Class; (b) whether the Settlement was negotiated at arm's-length; (c) whether the relief is adequate; and (d) whether the Settlement treats Settlement Class Members equitably relative to each other.  The Court may also consider the Fourth Circuit's approval factors: (1) the extent of discovery that has taken place and the stage of the proceedings; (2) bad faith or collusion and circumstances surrounding the negotiation; (3) the experience of counsel; (4) objections from class members; (5) the relative strength of the plaintiffs' case on the merits; (6) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (7) the anticipated duration and expense of additional litigation; and (8) the solvency of the defendants and the likelihood of recovery on a litigated judgment. *See Kirven v. Cent. States Health & Life Co. of Omaha*, No. CA 3:11-2149-MBS, 2015 WL 1314086, at *4 (D.S.C. Mar. 23, 2015) ("*Kirven II*").

(D.S.C. Dec. 12, 2014) ("*Kirven I*"). "In assessing the fairness and adequacy of a proposed settlement, 'there is a strong initial presumption that the compromise is fair and reasonable.'" *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (citation omitted).

This significant $192.5 million Settlement clearly satisfies the standards for preliminary approval.

### 1.    The Settlement Is the Product of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel and a Mediator

The fact that the Parties reached the Settlement after extensive, arm's-length negotiations between experienced counsel, with the assistance of a renowned mediator, creates a presumption of its fairness. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991) (a court should consider if a settlement "was reached as a result of good-faith bargaining at arm's length, without collusion"); *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 WL 4061537, at *12 (D.S.C. Sept. 14, 2012) ("supervision by a mediator lends an air of fairness to agreements that are ultimately reached"); *In re Delphi Corp. Sec. Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (speaking of Judge Phillips, "the Court and the parties have had the added benefit of the insight and considerable talents of a former federal judge who is one of the most prominent and highly skilled mediators of complex actions. . .").

Here, the Settlement was reached after rigorous, arm's-length negotiations, overseen by Judge Phillips. These negotiations were informed by the exchange of two rounds of detailed mediation statements before each of the two separate mediation sessions. In addition, pursuant to their informal discovery efforts, Lead Plaintiffs obtained and reviewed over 240,000 documents, totaling over 1.8 million pages of documents, as well as numerous deposition and hearing transcripts from other proceedings against SCANA, before the settlement was reached. Further, before the settlement, Lead Plaintiffs obtained and had begun reviewing over 5.2 million pages of

documents produced by Defendants in formal discovery. They had also obtained and reviewed over 11,000 pages of documents produced by third parties in formal discovery. This discovery, combined with the extensive investigation conducted by Lead Plaintiffs prior to filing the Complaint and the extensive briefing on the motions to dismiss and for mediation, resulted in Lead Plaintiffs having a thorough understanding of the legal and factual issues in this Action.

Courts also give considerable weight to the opinion of experienced and informed counsel. Here, Lead Plaintiffs were represented during these negotiations by experienced counsel with a proven track record of success in securities class action litigation. Lead Counsel have many years of experience in complex federal civil litigation, particularly the litigation of securities and other class actions. Lead Counsel are among the most experienced securities class action law firms in the country, with proven track records of success, including within the Fourth Circuit.[8] "Counsel in this case [including Labaton Sucharow] are affiliated with national law firms recognized for their experience in securities litigation and class representation." *In re NeuStar Inc. Sec. Litig.,* No. 14CV885, 2015 WL 5674798, at *11 (E.D. Va. Sept. 23, 2015) (*citing In re The Mills Corp. Sec. Litig.,* 265 F.R.D. 246, 256 (E.D. Va. 2009)) ("[W]hen Class Counsel [including Bernstein Litowitz] are nationally recognized members of the securities litigation bar, it is entirely warranted for this Court to pay heed to their judgment in approving, negotiating, and entering into a putative settlement.").

---

[8] *See, e.g., In re Genworth Financial, Inc. Sec. Litig.,* No. 3:14-cv-00682-JAG (E.D. Va.) (Bernstein Litowitz as co-lead counsel in $219 million settlement); *In re The Mills Corp. Sec. Litig.,* 265 F.R.D. 246 (E.D. Va. 2009) (Bernstein Litowitz as co-lead counsel in $202.75 million settlement); *In re Computer Sciences Corp. Sec. Litig.,* Civ. No. 11-610-TSE-IDD (E.D. Va. 2013) (Labaton Sucharow as class counsel in $97.5 million settlement); and *In re NII Holdings, Inc. Sec. Litig.,* Civ. No. 1:14-cv-00227-LMB-JFA (E.D. Va. 2016) (Labaton Sucharow as co-lead counsel in $41.5 million settlement).

## 2.    The Proposed Settlement Falls Well Within the Range of Approval

"When a proposed settlement appears to fall within the range of 'possible approval,' it is appropriate to issue preliminary approval and direct notice to members of the settlement class." *Kirven*, 2014 WL 12734325, at *8. The proposed $192.5 million Settlement, the largest securities class action recovery ever in this District, is an excellent recovery for the Settlement Class and falls well within the range of what is fair, reasonable, and adequate.

This Settlement provides a certain and substantial cash benefit to the Settlement Class, providing that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit valid claim forms. The Settlement is an excellent result for Class Members, especially in light of the significant risks of continued litigation. *See S.C. Nat. Bank v. Stone*, 139 F.R.D. 335, 340 (D.S.C. 1991) ("[C]ourts recognize "that stockholder litigation is notably difficult and notoriously uncertain.") (quotation marks and citations omitted); *see also Mills*, 265 F.R.D. at 256 (noting that the relative strength of a securities class action "may be especially misplaced in cases like the present, where '[e]lements such as scienter, materiality of misrepresentation and reliance by the class members often present significant barriers to recovery in securities fraud litigation'").

Although Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants are strong, they recognize the expense and length of litigation through trial and appeals, as well as the very substantial risks they would face in establishing liability and damages.

First, Lead Plaintiffs faced significant risks that, at either the summary-judgment stage or after a trial, that they would not be able to establish one or more of the required elements – falsity, materiality, scienter, and/or loss causation – to sustain their securities fraud claims. For example, Lead Plaintiffs would have faced substantial challenges in proving that certain of Defendants' statements, including those concerning the projected completion dates, costs, and eligibility for federal nuclear production tax credits of the Project, were not forward-looking statements that are

immune under the safe harbor provisions of the PSLRA. Defendants would have continued to vigorously argue that these statements were accompanied by meaningful cautionary language regarding the Project's risks (including risk warnings concerning the Project's schedule and costs) that rendered non-actionable Defendants' failure to disclose the independent adverse assessment of the Project by Bechtel Corporation ("Bechtel"), which is at the heart of the Complaint's allegations. Defendants would have also continued to argue that other allegedly false statements, *e.g.,* those regarding the Project's supposedly positive progress and Defendants' purported "transparency" and "prudent" oversight, were equally non-actionable puffery or statements of opinion on the grounds that, *inter alia*, Lead Plaintiffs would not be able to demonstrate that Defendants lacked any reasonable basis for opining that progress was being made on the Project. Moreover, Defendants would have maintained their arguments that their omissions of Bechtel's adverse findings were non-actionable on the basis that, *inter alia,* they had no duty to disclose such preliminary, non-reliable opinions of a third party who had limited information about the Project and was motivated by its own agenda (*i.e.*, getting more work on the Project).

Second, Lead Plaintiffs would have also faced challenges in proving that Defendants made the alleged false statements with the intent to mislead investors or were reckless in making the statements. For example, Defendants contend that the Individual Defendants reasonably relied on the schedule and cost estimates provided to SCANA by Westinghouse, its lead contractor on the Project, and further believed in good faith that the "EPC Amendment" entered into between SCANA and Westinghouse, just days before the start of the Class Period, fixed many of the problems with the Project identified by Bechtel in its report to SCANA.

Third, even if Lead Plaintiffs established liability, they would have faced significant hurdles in proving loss causation—that the alleged misstatements were the cause of investors'

losses—and in proving damages with respect to at least some of the alleged corrective disclosures. For example, Defendants argued in their opposition to Lead Plaintiffs' motion for class certification that the Court should end the Class Period on July 31, 2017, when Defendants announcement their abandonment of the Project—nearly five months before the end of the alleged Class Period—on the grounds that by that date, the risks related to the completion of the Project were fully disclosed. In the alternative, Defendants argued that at the least the Class Period should end no later than September 27, 2017, when the market learned of the existence of Bechtel's original report and its adverse findings, thereby eliminating numerous other subsequent corrective disclosures.  If Defendants prevailed on such and other loss causation arguments, recoverable damages would have declined substantially or been eliminated altogether.  Indeed, if the Class Period concluded on July 31, 2017 and earlier corrective disclosures contested by Defendants were also dismissed, maximum recoverable damages could have been as low as $200 million.  Given those risks, a recovery of $192.5 million represents a significant result for the Class.

With respect to all of these issues, Lead Plaintiffs would have to prevail at several stages—at class certification (including an interlocutory appeal of a class certification order to the Fourth Circuit under Rule 23(f)), a motion for summary judgment, and at trial, and if they prevailed on those, in the appeals that would likely follow—which could take years to resolve.  The Settlement avoids these risks and will provide a prompt and certain benefit to the Class rather than the mere possibility of a recovery after additional years of litigation and appeals.

### 3. The Settlement Treats All Settlement Class Members Fairly

The Settlement does not improperly grant preferential treatment to Lead Plaintiffs or any segment of the Settlement Class.  Rather, all Settlement Class Members will receive a distribution from the Net Settlement Fund pursuant to a plan of allocation approved by the Court.

At the final Settlement Hearing, Lead Plaintiffs will ask the Court to approve the proposed Plan of Allocation for the Net Settlement Fund (the "Plan," set forth in full in the Notice). Lead Plaintiffs' damages expert, in consultation with Lead Counsel, developed the Plan, which is comparable to plans of allocation that courts have approved in numerous other securities class actions. The Plan is based on Lead Plaintiffs' allegations that Defendants' alleged materially false and misleading statements and omissions that artificially inflated the prices of SCANA common stock during the Class Period, and that a series of public disclosures that partially corrected the alleged misrepresentations and omissions removed the inflation.

The Plan calculates a "Recognized Loss Amount" or "Recognized Gain Amount" for each purchase or acquisition of publicly-traded SCANA common stock during the Class Period that is listed in the Claim Form and for which adequate documentation is provided by the claimant. The calculation of Recognized Loss Amounts under the Plan will depend on when the claimant purchased and/or sold the shares, whether the claimant held the shares through the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e), and the value of the shares when the claimant purchased, sold, or held them. Under the Plan, a claimant's "Recognized Claim" will be the sum of the claimant's Recognized Loss Amounts minus the sum of the claimant's Recognized Gain Amounts, and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.

The Claims Administrator will calculate claimants' Recognized Claims using the transaction information that claimants provide to the Claims Administrator in their Proof of Claim and Release Forms. Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will make distributions to eligible Authorized Claimants. If any monies

remain in the Net Settlement Fund, the Claims Administrator will conduct additional re-distributions until it is no longer cost effective. At such time, any remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court.

The proposed Plan is thus a fair and reasonable method for allocating the Net Settlement Fund to eligible Settlement Class Members and merits approval at the Settlement Hearing.

### 4.     The Settlement Does Not Excessively Compensate Plaintiffs' Counsel

The proposed Settlement does not grant excessive compensation to Lead Counsel. The Settlement does not contemplate *any* specific award to Lead Counsel and Lead Counsel will be compensated out of the Settlement Fund pursuant to the approval of the Court.

In connection with Lead Counsel's fee and expense application, Lead Counsel will seek no more than 14% of the Settlement Fund, an amount that is well within the percentages that courts in the Fourth Circuit approve in securities class actions with comparable recoveries. Indeed, courts in South Carolina and other Fourth Circuit districts routinely approve fee awards in securities and other class actions as high as 30% of total recovery. *See e.g., KBC Asset Mgmt. NV v. 3D Sys. Corp.*, No. 0:15-CV-02393-MGL, 2018 WL 3105072, at *1 (D.S.C. June 25, 2018) (approving 30% fee award in securities class action); *Epstein v. World Acceptance Corp.*, No. 6:14-cv-01606-MGL, 2017 WL 11461887, at *1 (D.S.C. Dec. 18, 2017) (approving 30% fee award in securities class action); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 264 (E.D. Va. 2009) ("Though varied, it is worth noting as a starting point that percentage awards are 'often between 25% and 30% of the fund.'"); *see also In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) (awarding 28% of $219 million settlement fund). Lead Counsel will also seek payment of litigation expenses incurred in connection with the institution, prosecution, and resolution of the Action, in an amount not to exceed $1,200,000.

Lead Counsel's fee and expense application will be fully briefed and justified upon filing of a formal motion pursuant to the Preliminary Approval Order.  By granting preliminary approval of the proposed Settlement, the Court does not in any way pass upon the reasonableness of any subsequent fee or expense application, which will be decided *de novo* at the Settlement Hearing.

**B.      The Proposed Settlement Class Satisfies Rule 23**

At the Settlement Hearing, Lead Plaintiffs will ask the Court to grant final approval of the Settlement.  Pursuant to the recent amendments to Rule 23(e), at the preliminary approval stage the Court may consider whether certification of the Settlement Class is appropriate.

Courts have long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997).  Indeed, "actions under the federal securities laws are particularly well suited for representative litigation under Rule 23."  William B. Rubenstein, *Newberg on Class Actions* § 22:82 (5th ed. 2017).  Courts have long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See, e.g., NeuStar*, 2015 WL 5674798, at *2; *Mills*, 265 F.R.D. at 255. A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *See Amchem*, 521 U.S. at 593; *NeuStar*, 2015 WL 5674798, at *8.  As demonstrated below (as well as in Lead Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel (ECF Nos. 165-66)), certification of the proposed Settlement Class for purposes of the Settlement is appropriate here.

**1.      The Settlement Class Satisfies the Requirements of Rule 23(a)**

Certification is proper if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical []; and (4) the representative parties will fairly and

adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

**(a)**    **The Settlement Class Is So Numerous that Joinder Is Impracticable**

The "numerosity" requirement is usually met if there are more than twenty-five class members.  *See, e.g., In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 406 (E.D. Va. 2015) ("Although neither the Federal Rules nor the federal courts have identified a particular threshold, classes as small as 'twenty-five or more' have been certified.").

Here, the numerosity requirement is easily met. SCANA had approximately 142.9 million shares outstanding during the Class Period.  Further, during the Class Period, SCANA stock was traded nationally on the NYSE, an open and efficient market, with weekly and daily trading volumes averaging approximately 5.6 million and 1.1 million shares, respectively. Accordingly, the proposed Settlement Class consists of hundreds, if not thousands, or investors worldwide.  *See In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 104-05 (E.D. Va. 2009) (holding that numerosity requirement had been met where "millions of shares [were] outstanding during the [c]lass [p]eriod"). Therefore, numerosity is met here.

**(b)**    **There Are Common Questions of Law and Fact**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." However, commonality does not require that "the class must have 'identical factual and legal claims in all respects.'" *Mills*, 257 F.R.D. at 105 (*quoting Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998)); *Central Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992) (Blatt, J.) (commonality "does not require that all, or even most issues be common, nor that common issues predominate, but only that common issues exist"), aff'd 6 F.3d 177 (4th Cir. 1993). Rather, "there need be only a single issue common to the class." *Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 417 (E.D. Va. 2016).  "This is not a heavy burden in

21

securities fraud class actions." *In re NeuStar, Inc. Sec. Litig.*, 2015 WL 5674798, at *3 (E.D. Va. Sept. 23, 2015); *see also Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 98 (M.D.N.C. 1993) ("The commonality requirement . . . has been applied permissively . . . in the context of securities fraud litigation.").

The common questions of fact and law here include: (i) whether Defendants violated the Exchange Act; (ii) whether Defendants omitted material facts; (iii) whether Defendants made materially false statements; (iv) whether Defendants knew or recklessly disregarded that their statements were false and misleading; (v) whether the price of SCANA common stock was artificially inflated; (vi) whether Defendants' misconduct caused the members of the Settlement Class to sustain damages; and (vii) the extent of damage sustained by Settlement Class Members.

These common questions are fundamental to the resolution of the claims asserted against Defendants and, therefore, readily satisfy the commonality requirement. *See, e.g.*, *City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*, 270 F.R.D. 247, 251 (D.S.C. 2010) (where "plaintiff alleges that the same misrepresentations or omissions were made to all members of the proposed class through press releases, conference calls, and filings with the SEC . . . the commonality requirement has been satisfied"); *NeuStar, Inc.*, 2015 WL 5674798, at *6 ("[T]he questions of whether [d]efendants' statements or omissions were material, whether they were made in connection with the purchase or sale of securities, and whether they were made with scienter, are necessarily common to each class member given that [d]efendants' conduct alone is relevant to their proof.").

### (c)     Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that the representative parties' claims be "typical" of the claims of the prospective class. This typicality element is satisfied when "each class member's claim arises

from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *NII Holdings*, 311 F.R.D. at 406; *see also KBC Asset Mgmt. NV v. 3D Sys. Corp.*, No. 0:15-CV-02393-MGL, 2017 WL 4297450, at *5 (D.S.C. Sept. 28, 2017) (typicality requirement satisfied where "it is undisputed KBC's claims and those of the Class arise out of the same course of conduct and are premised upon the same legal theory"). "Put simply, a [l]ead [p]laintiff must demonstrate that it has claims that are of the same sort as other members of the proposed class." *NII Holdings*, 311 F.R.D. at 407. In other words, so long as Lead Plaintiffs "seek to recover damages for losses caused by the same allegedly materially false and misleading statements and omissions," the typicality requirement is met. *Id.*

Here, Lead Plaintiffs' claims are typical of the claims of the Settlement Class because all claims are based on Defendants' alleged wrongful conduct and all members of the Settlement Class were similarly affected by such alleged conduct. Like all Settlement Class Members, Lead Plaintiffs purchased publicly-traded common stock of SCANA during the Class Period and claim to have suffered damages when Defendants' misstatements and omissions were revealed.

### (d)     Lead Plaintiffs Will Adequately Represent the Settlement Class

The adequacy requirement of Rule 23(a)(4) demands that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied where: (1) the proposed class representative's interests are to vigorously pursue the claims of the class and are not antagonistic to the interests of other class members; and (2) the proposed class counsel are qualified, experienced and able to conduct the litigation. *See Sonoco*, 270 F.R.D. at 252. The inquiry focuses on "uncover[ing] conflicts of interest between named parties and the class they seek to represent." *KBC*, 2017 WL 4297450, at *5. Here, Lead Plaintiffs are sophisticated institutional investors that have and will continue to represent the interests of the

23

Settlement Class fairly and adequately, and there is no antagonism or conflict of interest between Lead Plaintiffs and the other Settlement Class Members.  Also, Lead Plaintiffs have retained counsel highly experienced in securities litigation who have successfully prosecuted many securities and other complex class actions throughout the United States.  Lead Plaintiffs are thus adequate representatives of the Settlement Class, and their counsel are qualified, experienced, and capable of prosecuting this Action.

### 2.    The Settlement Class Satisfies Fed. R. Civ. P. 23(b)(3)

To certify a class under Rule 23(b)(3): (1) common questions of law or fact must "predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3), and the class action mechanism must be "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*.

As the Supreme Court has found, predominance is a test "readily met" in cases alleging violations of the securities laws. *Amchem*, 521 U.S. at 625.  Indeed, as the above analysis of Lead Plaintiffs' allegations under Rule 23(a)(2)'s commonality standard demonstrates, there are numerous questions of law and fact common to Lead Plaintiffs and the proposed Settlement Class, including whether Defendants' statements and omissions about SCANA's business during the Class Period were false and misleading, whether Defendants acted with scienter, and whether, and to what extent, Settlement Class Members suffered damages.  *See Sonoco*, 270 F.R.D. at 254 (noting that the predominance inquiry "focuses on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones").

A class action is also "superior to other available methods for fairly and efficiently adjudicating" the claims.  Fed. R. Civ. P. 23(b)(3).  Indeed, the geographically dispersed nature of the Settlement Class, the inefficiency of multiple lawsuits, and the size of individual recoveries in comparison to the cost of litigation, strongly support a finding of superiority here. *See, e.g.*, *In re*

*BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 544–45 (E.D. Va. 2006); *Sonoco*, 270 F.R.D. at 257.  The Settlement Class thus satisfies all the requirements of Rules 23(a) and 23(b).

### C.     THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

The Court should approve the form and content of the proposed Notice and Summary Notice.  *See* Stipulation, Exs. A-1 and A-3.  The Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Settlement Class Members will have.  Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice objectively and neutrally apprises all Settlement Class Members of (among many other disclosures) the nature of the Action; the definition of the Settlement Class; the claims and issues involved; that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadlines for doing so); and the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3)(B).

With respect to items relating to the Settlement, the Notice also satisfies the separate disclosure requirements imposed by the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(7).  The Notice states the amount of the Settlement on an absolute and per-share basis; provides a statement concerning the issues about which the Parties disagree; states the amount of attorneys' fees and litigation expenses that Lead Counsel will seek; provides the name, mailing address, email address, and telephone number of Lead Counsel, who will be available to answer questions from Settlement Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement.  *Id.*

The proposed notice program, which is set forth in the proposed Preliminary Approval Order submitted herewith, readily meets the standards under the Federal Rules of Civil Procedure and due process.  Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule

23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. Fed. R. Civ. P. 23(e)(1).

Lead Plaintiffs propose that Epiq Systems ("Epiq") administer the notice and claims process. Epiq is an independent settlement and claims administrator that Lead Counsel selected as the proposed claims administrator after a competitive bidding process. If the Court preliminarily approves the Settlement, SCANA will provide contact information of potential Settlement Class Members to Epiq for the purpose of identifying and giving notice to the Settlement Class and Epiq will disseminate the Notice and Claim Form (the "Notice Packet") to all identified potential Settlement Class Members. Epiq will also use reasonable efforts to give notice to brokerage firms and other nominees who purchased or acquired publicly traded SCANA common stock during the Class Period on behalf of other beneficial owners. These nominee purchasers will either forward the Notice Packet or provide the names, mailing addresses, and, if available, email addresses of the beneficial owners to Epiq, which will then mail or email the Notice Packet to such identified beneficial owners. Epiq will also cause the Summary Notice to be published once in the *Wall Street Journal* and be transmitted over the *PR Newswire*, and will post the Notice and other materials on a website to be developed for the Settlement.[9]

Courts routinely find that comparable notice programs, combining individual notice by first class mail to all class members who can reasonably be identified, supplemented with publication notice, meet all the requirements of Rule 23 and due process. *See, e.g., In re Career Educ. Corp.*

---

[9] The Parties have also agreed that, no later than ten calendar days following the filing of the Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005) *et seq.* ("CAFA"). *See* Stipulation ¶ 25.

*Sec. Litig.*, No. 03 C 8884, 2008 WL 8666579, at *5 (N.D. Ill. June 26, 2008) (authorizing notice

by first-class mail and publication in *Investors' Business Daily* and over *PR Newswire*).

### D.     PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final

approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and

deadlines for submitting claims or for objecting to the Settlement.[10]   The Parties respectfully

propose the following schedule for the Court's consideration, as agreed to by the Parties and set

forth in the proposed Preliminary Approval Order:

| Event | Time for Compliance |
|---|---|
| Deadline to commence mailing the Notice and Proof of Claim to potential Settlement Class Members ("Notice Date") | 20 business days after entry of Preliminary Approval Order |
| Deadline for publishing Summary Notice | 10 business days after Notice Date |
| Deadline for filing final approval and fee motions | 35 calendar days prior to Settlement Hearing |
| Deadline for receipt of exclusion requests or objections | 21 calendar days prior to Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to Settlement Hearing |
| Settlement Hearing | 110 days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claim Forms | 120 calendar days after Notice Date |

If the Court agrees with the proposed schedule, Lead Plaintiffs request that the Court

schedule the Settlement Hearing for a **date 110 calendar days** after entry of the Preliminary

Approval Order, or at the Court's earliest convenience thereafter.  Lead Plaintiffs request that the

hearing be scheduled, if possible, during the week of **Monday,  May 11, 2020**, which is consistent

---

[10]  The blanks for certain deadlines currently contained in the agreed-upon form of Notice will be
filled in once the Court sets those dates and prior to mailing to Settlement Class Members.

with the proposed schedule if the Court enters the Preliminary Approval Order within the next 14 days, or by January 21, 2020.

## IV.     CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to Settlement Class Members; (iii) approve Epiq as the Claims Administrator; and (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

DATED: January 7, 2020

*/s/ Marlon E. Kimpson*
Marlon E. Kimpson (D.S.C. Bar No. 7487)
William S. Norton (D.S.C. Bar No. 11343)
Joshua C. Littlejohn (D.S.C. Bar No. 10426)
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, South Carolina 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
mkimpson@motleyrice.com
bnorton@motleyrice.com
jlittlejohn@motleyrice.com

*Liaison Counsel for Lead Plaintiffs West Virginia IMB and Blue Sky*

James W. Johnson *(admitted pro hac vice)*
Michael H. Rogers *(admitted pro hac vice)*
Irina Vasilchenko *(admitted pro hac vice)*
James Christie *(admitted pro hac vice)*
Philip J. Leggio *(admitted pro hac vice)*
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jjohnson@labaton.com
mrogers@labaton.com
ivasilchenko@labaton.com

jchristie@labaton.com
pleggio@labaton.com

*Co-Lead Counsel for Lead Plaintiffs West Virginia IMB and Blue Sky and Proposed Lead Counsel for the Class*


John C. Browne *(admitted pro hac vice)*
Jeroen Van Kwawegen (*admitted pro hac vice*)
Lauren Ormsbee *(admitted pro hac vice)*
Michael M. Mathai *(admitted pro hac vice)*
Kate W. Aufses *(admitted pro hac vice)*
**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
johnb@blbglaw.com
jeroen@blbglaw.com
lauren@blbglaw.com
michael.mathai@blbglaw.com
kate.aufses@blbglaw.com

*Co-Lead Counsel for Lead Plaintiffs West Virginia IMB and Blue Sky and Proposed Lead Counsel for the Class*

29

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 7, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Marlon E. Kimpson*

MARLON E. KIMPSON (D.S.C. Bar No. 7487)
