# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**(COLUMBIA DIVISION)**

|  |  |
|---|---|
| *In re SCANA Corporation Securities Litigation* | Civil Action No. 3:17-CV-2616-MBS<br><br>CLASS ACTION |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement, dated as of December 20, 2019 (the "Stipulation") is entered into between: (a) Lead Plaintiffs the West Virginia Investment Management Board ("West Virginia IMB") and Stichting Blue Sky Global Equity Active Low Volatility Fund and Stichting Blue Sky Active Large Cap Equity USA Fund (collectively, "Blue Sky" and, together with West Virginia IMB, "Lead Plaintiffs"), on behalf of themselves and the Settlement Class (defined below); and (b) Defendants SCANA Corporation ("SCANA" or the "Company"), Kevin B. Marsh ("Marsh"), Jimmy E. Addison ("Addison"), Stephen A. Byrne ("Byrne"), Harold C. Stowe ("Stowe"), D. Maybank Haygood ("Haygood"), and James W. Roquemore ("Roquemore") (collectively, "Defendants"), and embodies the terms and conditions of the settlement of the above-captioned action (the "Action").[1] Subject to the approval of the Court and the terms and conditions expressly provided herein, this Stipulation is intended to fully,

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in ¶ 1 herein.

finally, and forever compromise, settle, release, resolve, and dismiss with prejudice the Action and all Released Plaintiffs' Claims (defined below) against Defendants.

WHEREAS:

A.     Beginning in September 2017, certain related class actions (*Norman v. SCANA Corporation et al.*, No. 3:17-CV2616-MBS; *Evans v. SCANA Corporation et al.*, No. 3:17-cv-02683-MBS; *Fox v. SCANA Corporation et al.*, No. 3:17-cv-03063-MBS, and *West Palm Beach Firefighters' Pension Fund v. SCANA Corporation et al.*, No. 3:17-cv-03141-MBS) were filed in the United States District Court for the District of South Carolina (the "Court") alleging violations of the federal securities laws.

B.     By Order dated January 23, 2018, the Court: (i) consolidated the related actions into this lead Action, to be captioned "*In re SCANA Corporation Securities Litigation*" and maintained under File No. 3:17-CV-2616-MBS; (ii) appointed West Virginia IMB and Blue Sky as Lead Plaintiffs; and (iii) approved Bernstein Litowitz Berger & Grossmann LLP and Labaton Sucharow LLP as Lead Counsel.

C.     On March 30, 2018, Lead Plaintiffs filed the Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act.  Among other things, the Complaint alleged that Defendants made materially false and misleading statements and omissions with respect to SCANA's effort to build two nuclear reactors at the V.C Summer nuclear generating station near Jenkinsville, South Carolina (the "Project").  In particular, the Complaint alleged that Defendants misrepresented the status and their oversight of the Project, including by assuring investors that the Project was on schedule and

on budget, making significant progress towards completion, and being managed prudently and transparently by Defendants. According to the Complaint, such statements were false and misleading because Defendants allegedly knew from the start of the Class Period that the Project was not realistically going to be completed by 2020, as planned, allegedly due in large part to Defendants' deficient oversight. The Complaint further alleged that the price of SCANA common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements and omissions and declined when the truth was revealed through a series of partial corrective disclosures.

D.      On June 4, 2018, Defendant SCANA, together with the Director Defendants (Stowe, Haygood, and Roquemore, and collectively with SCANA, the "SCANA Defendants"), and Defendants Marsh, Addison, and Byrne filed four separate motions to dismiss the Complaint. On August 9, 2018, Lead Plaintiffs filed their omnibus memorandum of law in opposition to the motions to dismiss, and, on September 18-19, 2018, Defendants filed their replies.

E.      On March 4, 2019, the Court heard oral argument on Defendants' motions to dismiss.

F.      On March 29, 2019, the Court entered its Opinion and Order denying Defendants' motions to dismiss the Complaint, except that the Court granted the motions to the extent they sought dismissal based on claims for violation of Item 303 (the "MTD Opinion").

G.      On June 4, 2019, the SCANA Defendants and Defendants Marsh, Addison, and Byrne each filed Answers to the Complaint.

H.      On June 28, 2019, Lead Plaintiffs filed their motion for class certification and appointment of class counsel, which was accompanied by a report from Lead Plaintiffs' expert on market efficiency and common damages methodologies, Chad Coffman. On September 25, 2019,

Defendants filed their opposition to Lead Plaintiffs' motion for class certification and appointment of class counsel, which was accompanied by a report from Defendants' expert, Christopher James, Ph.D., in response to Mr. Coffman's expert report.

I.     Beginning no later than January 2018, and prior to the start of formal discovery in the Action, Lead Plaintiffs state that they engaged in extensive investigation and discovery efforts to support the allegations in the Complaint and to prepare for depositions and formal discovery.  For example, Lead Plaintiffs issued several requests for documents to South Carolina regulators, South Carolina newspapers, and Santee Cooper, South Carolina's state-owned electric and water utility that was SCANA's junior partner on the Project, pursuant to the South Carolina Freedom of Information Act ("FOIA").  Prior to filing the Complaint on March 30, 2018, Lead Plaintiffs received and reviewed 1,513 documents (totaling 16,560 pages), and used information from these documents in support of the allegations in the Complaint.  Lead Plaintiffs then received and reviewed another 230,778 documents (totaling 1,694,008 pages) in 2019, the majority of which were produced following the issuance of the Court's March 29, 2019 MTD Opinion sustaining the Complaint.  In total, Lead Plaintiffs received and reviewed 244,233 documents (totaling 1,836,743 pages) prior to the start of formal discovery.  In addition, as part of their investigation for the allegations in the Complaint, Lead Plaintiffs contacted 200 former employees of SCANA and its lead contractors on the Project and interviewed 69 of them (two of whom were relied on in the Complaint).

J.     Formal discovery in the Action commenced in June 2019.  Defendants produced 565,507 documents, totaling 5,215,238 pages, to Lead Plaintiffs, and Lead Plaintiffs produced 2,120 documents, totaling 146,963 pages, to Defendants.  In addition, Lead Plaintiffs' four relevant non-party investment managers, who purchased and/or sold SCANA common stock on Lead

Plaintiffs' behalves during the class period, produced 677 documents, totaling 11,260 pages. In total, 568,304 documents, totaling 5,373,561 pages, were produced by the parties and third parties in formal discovery.

K.      In connection with Lead Plaintiffs' June 28, 2019 class certification motion, Defendants deposed, and Lead Plaintiffs defended the depositions of, a representative from West Virginia IMB and a representative from Blue Sky, as well as Lead Plaintiffs' expert Chad Coffman. Defendants also deposed, and Lead Plaintiffs cross-examined, representatives from each of the Lead Plaintiffs' four relevant investment managers. Further, Defendants served, and Lead Plaintiffs responded to, extensive interrogatories to Lead Plaintiffs. Finally, the parties met and conferred over numerous disputed discovery issues over several months.

L.      The Parties (defined below) began exploring the possibility of a settlement in February 2019. Specifically, the Parties agreed to engage in private mediation and subsequently retained retired United States District Court Judge Layn R. Phillips to act as mediator in the case (the "Mediator"). On May 17, 2019, Lead Counsel and Defendants' Counsel, among others, participated in a full-day mediation session before the Mediator. In advance of that session, the Parties submitted detailed opening and reply mediation statements to the Mediator, together with numerous supporting exhibits, which addressed both liability and damages issues. The session ended without any agreement being reached. The Parties continued discussions with the Mediator following the session exploring the possibility of a settlement. The Parties participated in a second mediation session before the Mediator on October 2, 2019. In advance of that session, the Parties submitted supplemental opening and reply mediation statements and further exhibits. At the conclusion of that mediation session, the Parties reached an agreement in principle to settle the Action, which was memorialized in a term sheet executed and finalized on October 3, 2019 (the

"Term Sheet"). The Term Sheet set forth, among other things, the Parties' agreement to settle and release claims against Defendants in return for a payment of $192,500,000.00—with $160,000,000.00 paid in cash and $32,500,000.00 paid in cash or freely-tradable Dominion Energy common stock at the option of SCANA—subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

M.    This Stipulation (together with the exhibits hereto) reflects the final and binding agreement between the Parties and supersedes the Term Sheet.

N.    Based upon their investigation, prosecution, and mediation of the case, and the discovery conducted in the Action, Lead Plaintiffs and Lead Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to Lead Plaintiffs and the other members of the Settlement Class, and in their best interests. Based on Lead Plaintiffs' direct oversight of the prosecution of this matter and with the advice of their counsel, Lead Plaintiffs have agreed to settle and release the Released Plaintiffs' Claims pursuant to the terms and provisions of this Stipulation, after considering, among other things: (a) the substantial financial benefit that Lead Plaintiffs and the other members of the Settlement Class will receive under the proposed Settlement; and (b) the significant risks and costs of continued litigation and trial.

O.    Throughout this Action, Defendants expressly have denied, and continue to deny, that they have committed any act or omission giving rise to any liability under §§ 10(b) or 20(a) of the Exchange Act as alleged in the Action. Specifically, Defendants expressly have denied, and continue to deny, each and all of the claims alleged by Lead Plaintiffs in the Action, including, without limitation, any such liability arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action. Defendants also have denied, and continue to deny, among other allegations, that Lead Plaintiffs or any Class Member were

6

harmed by the conduct alleged in the Action or that could have been alleged as part of the Action, and that Lead Plaintiffs or any Class Member have suffered any damages. In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Action.

P.      As set forth below, neither the Settlement nor any of the terms of this Stipulation shall in any event be construed or deemed to be evidence of or constitute an admission, concession, or finding of any fault, liability, wrongdoing, or damage whatsoever or any infirmity in the defenses that Defendants have, or could have, asserted. Defendants have concluded that further litigation of the Action would be protracted and expensive, and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases such as this Action. Defendants have determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation.

NOW THEREFORE, it is hereby STIPULATED AND AGREED, by and among Lead Plaintiffs (individually and on behalf of all other members of the Settlement Class) and Defendants, by and through their respective undersigned attorneys and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties from the Settlement, all Released Plaintiffs' Claims as against the Defendants' Releasees (defined below) and all Released Defendants' Claims (defined below) as against the Plaintiffs' Releasees shall be settled and released, upon and subject to the terms and conditions set forth below.

## DEFINITIONS

1.     As used in this Stipulation and any exhibits attached hereto and made a part hereof, the following capitalized terms shall have the following meanings:

(a)     "Action" means the consolidated securities class action in the matter styled *In re SCANA Corporation Securities Litigation*, Case No. 3:17-CV-2616-MBS, and includes all actions consolidated therein.

(b)     "Alternate Judgment" means a form of final judgment that may be entered by the Court herein but in a form other than the form of Judgment provided for in this Stipulation.

(c)     "Authorized Claimant" means a Settlement Class Member who submits a Claim to the Claims Administrator that is approved by the Court for payment from the Net Settlement Fund.

(d)     "Blue Sky" means Stichting Blue Sky Global Equity Active Low Volatility Fund and Stichting Blue Sky Active Large Cap Equity USA Fund.

(e)     "Cash Settlement Amount" means one hundred sixty million dollars ($160,000,000.00) in cash.

(f)     "Cash Settlement Fund" means the Cash Settlement Amount and any cash amounts, if paid, deemed included under ¶¶ 8, 10(d)(i) and 10(m) of this Stipulation, plus any and all interest earned thereon.

(g)     "CIC" means an acquisition of Dominion Energy, Inc. ("Dominion Energy") by way of merger or through the acquisition of all of the outstanding shares of Dominion Energy common stock (including by tender offer) or any other corporate transaction in which the outstanding shares of Dominion Energy common stock are extinguished.

(h)     "CIC Transaction" means a transaction or transactions effecting a CIC.

(i)     "Claim" means a paper claim submitted on a Proof of Claim Form or an electronic claim that is submitted to the Claims Administrator.

(j)     "Claim Form" or "Proof of Claim Form" means the form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, that a Claimant must complete and submit should that Claimant seek to share in a distribution of the Net Settlement Fund.

(k)     "Claimant" means a person or entity who or which submits a Claim to the Claims Administrator seeking to share in a distribution of the Net Settlement Fund.

(l)     "Claims Administrator" means the firm retained by Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Settlement Class Members and to administer the Settlement.

(m)     "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

(n)     "Class Period" means the period from October 27, 2015 through December 20, 2017, inclusive.

(o)     "Class Settlement Shares" means the Settlement Shares, less any Settlement Shares awarded to Plaintiffs' Counsel for attorneys' fees.

(p)     "Complaint" means the Consolidated Class Action Complaint for Violations of the Federal Securities Laws filed in the Action on March 30, 2018.

(q)     "Court" means the United States District Court for the District of South Carolina (Columbia Division).

(r)     "Defendants" means SCANA and the Individual Defendants.

(s)     "Defendants' Counsel" means McGuireWoods LLP, counsel for Dominion Energy and Defendants SCANA, Stowe, Haygood, and Roquemore; Cadwalader, Wickersham & Taft LLP, counsel for Defendant Marsh; Alston & Bird, counsel for Defendant Addison; and Wilmer Cutler Pickering Hale and Dorr, LLP, counsel for Defendant Byrne.

(t)     "Defendants' Releasees" means Defendants, Dominion Energy, and the current and former parents, affiliates, subsidiaries, officers, directors, agents, successors, predecessors, assigns, assignees, partnerships, partners, trustees, trusts, employees, Immediate Family Members, insurers, reinsurers, and attorneys of any Defendant or Dominion Energy. Defendants' Releasees do not include outside or independent auditors or accountants of any Defendant or of Dominion Energy, and for the avoidance of doubt, this Settlement does not settle or release any claims against any outside or independent auditor or accountant of any Defendant or of Dominion Energy.

(u)     "Dominion Energy" means Dominion Energy, Inc.

(v)     "Effective Date" with respect to the Settlement means the first date by which all of the events and conditions specified in ¶ 38 of this Stipulation have been met and have occurred or have been waived.

(w)     "Escrow Account" means an interest-bearing escrow account maintained at Citibank, N.A., in which the Cash Settlement Amount, plus the net cash proceeds from the sale of any Class Settlement Shares, will be deposited and maintained and held in escrow under the control of Lead Counsel.

(x)     "Escrow Agent" means Citibank, N.A.

(y)     "Escrow Agreement" means the agreement between Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

(z)     "Excluded Defendants' Claims" means (i) any claims relating to the enforcement of the Settlement, and (ii) any claims against any person or entity who or which submits a request for exclusion that is accepted by the Court.

(aa)     "Excluded Plaintiffs' Claims" means: (i) any claims asserted in any ERISA or derivative action, including, without limitation, the claims asserted in *In re: SCANA Corporation Derivative Litigation*, No. 3:17-cv-03166-MBS (D.S.C.), *Crangle v. Marsh et al.*, No. 2017-CP-40-05791 (S.C. Ct. Comm. Pls., Richland Cty.), *Todd v. Marsh et al*., No. 2017-CP-40-06621 (S.C. Ct. Comm. Pls., Richland Cty.), *In re SCANA Corporation Public Shareholder Litigation*, Lead Case No. 3:18-cv-00505-MBS (D.S.C.), or *KBC Asset Management LV v. Marsh et al.*, No. 3:19-cv-1457-MBS (D.S.C.), or any cases consolidated into those actions; (ii) any claims by any governmental entity that arise out of any governmental investigation of Defendants relating to the conduct alleged in the Action, including, without limitation, the claims asserted in *Request of the Office of Regulatory Staff for Rate Relief to South Carolina Electric & Gas Company's Rates Pursuant to S.C. Code Ann. § 58-27-920*, S.C. PSC Dkt. No. 2017-305-E; (iii) any claims asserted in any ratepayer action, including, without limitation, the claims asserted in *Timothy Glibowski v. SCANA Corp*., No. 9:18-273-TLW (D.S.C.), *Lightsey et al. v. South Carolina Electric & Gas Co. et al.*, Case No. 2017-CP-25-00355 (S.C. Ct. Comm. Pls., Hampton Cty.), *Cleckley v. SCE&G*, No. 2017-CP-40-04833 (S.C. Ct. Comm. Pls., Richland Cty.), *Cook v. S.C. Pub. Serv. Auth.*, No. 2017-CP-25-00348 (S.C. Ct. Comm. Pls., Hampton Cty.), *Goodman v. SCANA Corp.*, No. 2017-CP-20-00300 (S.C. Ct. Comm. Pls., Fairfield Cty.), *Luquire v. Marsh et*

*al.*, No. 5:19-cv-2516-TLW (D.S.C.), or any cases consolidated into those actions; (iv) any claims asserted in *Fairfield Co. v. South Carolina Electric & Gas Co*., No. 2017-CP-20-458 (S.C. Ct. Comm. Pls., Fairfield Cty.), *Fluor Enterprises, Inc. v. South Carolina Electric & Gas Company*, No. 2018-CP-0343 (S.C. Ct. Comm. Pls., Fairfield Cty.), or *Friends of the Earth and Sierra Club* v. *South Carolina Electric & Gas Company*, S.C. PSC Dkt. No. 2017-207-E, or any cases consolidated into those actions; (v) any claims relating to the enforcement of the Settlement; and (vi) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

(bb)    "Final," with respect to the Judgment or, if applicable, the Alternate Judgment, or any other court order, means: (i) if no appeal is filed, the expiration date of the time provided for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty (30) calendar days after entry of the judgment or order; or (ii) if there is an appeal from the judgment or order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs, or expenses, or (ii) the plan of allocation of Settlement proceeds (as submitted or subsequently modified), shall not in any way delay or preclude a judgment from becoming Final.

(cc)    "Immediate Family" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law,

and sisters-in-law.  As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

(dd)    "Individual Defendants" means Kevin B. Marsh, Jimmy E. Addison, Stephen A. Byrne, Harold C. Stowe, D. Maybank Haygood, and James W. Roquemore.

(ee)    "Judgment" means the final judgment, substantially in the form attached hereto as Exhibit B, to be entered by the Court approving the Settlement.

(ff)    "Lead Counsel" means the law firms of Bernstein Litowitz Berger & Grossmann LLP and Labaton Sucharow LLP.

(gg)    "Lead Plaintiffs" means West Virginia IMB and Blue Sky.

(hh)    "Liaison Counsel" means Motley Rice LLC.

(ii)    "Litigation Expenses" means costs and expenses incurred in connection with commencing, prosecuting, and settling the Action (which may include the costs and expenses of Lead Plaintiffs directly related to their representation of the Settlement Class), for which Lead Counsel intend to apply to the Court for payment from the Settlement Fund.

(jj)    "Net Settlement Fund" means the Settlement Fund (including, if applicable, the net cash proceeds from the sale of any Class Settlement Shares deposited into the Escrow Account in accordance with ¶ 10(d)(i) below, as well as accrued interest thereon) less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; (iv) any attorneys' fees awarded by the Court; and (v) any other costs or fees approved by the Court.

(kk)    "Notice" means the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees

and Litigation Expenses, substantially in the form attached hereto as Exhibit 1 to Exhibit A, which is to be mailed or emailed to Settlement Class Members.

(ll)    "Notice and Administration Costs" means the costs, fees, and expenses that are incurred by the Claims Administrator and/or Lead Counsel in connection with:  (i) providing notices to the Settlement Class; and (ii) administering the Settlement, including but not limited to the Claims process, as well as the costs, fees, and expenses incurred in connection with the Escrow Account, the Securities Brokerage Account, and the distribution or sale of Settlement Shares.

(mm)    "Officer" means any officer as that term is defined in Securities and Exchange Act Rule 16a-1(f).

(nn)    "Parties" means Defendants and Lead Plaintiffs, on behalf of themselves and the Settlement Class.

(oo)    "Plaintiffs' Counsel" means Lead Counsel and Liaison Counsel.

(pp)    "Plaintiffs' Releasees" means Lead Plaintiffs, all other Settlement Class Members, and their respective current and former parents, affiliates, subsidiaries, officers, directors, agents, successors, predecessors, assigns, assignees, partnerships, partners, trustees, trusts, employees, Immediate Family Members, insurers, reinsurers, and attorneys.

(qq)    "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund set forth in the Notice.

(rr)    "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Settlement and directing that notice of the Settlement be provided to the Settlement Class.

(ss)    "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended.

(tt)    "Released Claims" means all Released Defendants' Claims and all Released Plaintiffs' Claims.

(uu)    "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common, or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted against Defendants.  Released Defendants' Claims do not cover, include, or release any of the Excluded Defendants' Claims.

(vv)    "Released Plaintiffs' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common, or foreign law, that Lead Plaintiffs or any other member of the Settlement Class (i) asserted in the Complaint, or (ii) could have asserted in the Action or any other forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations, or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase of SCANA common stock during the Class Period.  Released Plaintiffs' Claims do not cover, include, or release any of the Excluded Plaintiffs' Claims.

(ww)    "Releasee(s)" means each and any of the Defendants' Releasees and each and any of the Plaintiffs' Releasees.

(xx)    "Releases" means the releases set forth in ¶¶ 5-6 of this Stipulation.

(yy)    "SCANA" or the "Company" means SCANA Corporation.

(zz)    "Securities Brokerage Account" means the securities brokerage account that Lead Counsel will designate as the recipient of the Settlement Shares.

(aaa)    "Settlement" means the settlement between Lead Plaintiffs and Defendants on the terms and conditions set forth in this Stipulation.

(bbb) "Settlement Amount" means a total consideration equal to $192,500,000.00 in value as determined in accordance with ¶¶ 8 and 10(a) of this Stipulation, consisting of the Cash Settlement Amount and the Settlement Shares (or the cash value of any such Settlement Shares which SCANA elects to pay in cash in lieu of shares in accordance with ¶ 8 below).

(ccc) "Settlement Class" or "Class" means all persons and entities who or which purchased or otherwise acquired publicly traded SCANA common stock during the period from October 27, 2015 through December 20, 2017, inclusive, and were damaged thereby. Excluded from the Settlement Class are: (i) Defendants and Dominion Energy; (ii) the Immediate Family members of the Individual Defendants; (iii) the Officers and Directors of SCANA during the Class Period and their Immediate Family members; (iv) any parents, subsidiaries, or affiliates of SCANA; (v) any firm, trust, corporation, or other entity in which any Defendant has, or had during the Class Period, a controlling interest; and (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person or entity. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

(ddd) "Settlement Class Member" or "Class Member" means each person and entity who or which is a member of the Settlement Class.

(eee) "Settlement Fairness Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

(fff) "Settlement Fund" means the Cash Settlement Fund plus the Settlement Shares.

(ggg) "Settlement Shares" means the number of shares of freely-tradeable Dominion Energy, Inc. (D) common stock that equates to at least thirty-two million, five hundred thousand dollars ($32,500,000.00), as determined in accordance with ¶ 10(a) of this Stipulation.

(hhh) "Summary Notice" means the Summary Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Litigation Expenses, substantially in the form attached hereto as Exhibit 3 to Exhibit A, to be published as set forth in the Preliminary Approval Order.

(iii) "Taxes" means: (i) all federal, state, and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; and (ii) the expenses and costs incurred by Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants).

(jjj) "Term Sheet" means the confidential term sheet memorializing the Parties' agreement in principle to settle the Action executed and finalized on October 3, 2019.

(kkk) "Unknown Claims" means any Released Plaintiffs' Claims which any Lead Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, and any Released Defendants' Claims which any Defendant or any other Defendants' Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiffs and Defendants shall expressly waive, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed to have waived, and by

operation of the Judgment or the Alternate Judgment, if applicable, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Lead Plaintiffs and Defendants acknowledge, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

(lll)    "West Virginia IMB" means West Virginia Investment Management Board.

## CLASS CERTIFICATION

2.    Solely for purposes of the Settlement and for no other purpose, Defendants stipulate and agree to:  (a) certification of the Action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class; (b) certification of Lead Plaintiffs as Class Representatives for the Settlement Class; and (c) appointment of Lead Counsel as Class Counsel for the Settlement Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

## PRELIMINARY APPROVAL OF SETTLEMENT

3.    Promptly upon execution of this Stipulation, Lead Plaintiffs will move for preliminary approval of the Settlement, authorization to provide notice of the Settlement to the Settlement Class, and the scheduling of a hearing for consideration of final approval of the Settlement, which motion shall be unopposed by Defendants.  Concurrently with the motion for

preliminary approval, Lead Plaintiffs shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A.

## **RELEASE OF CLAIMS**

4.      The obligations incurred pursuant to this Stipulation are in consideration of:  (a) the full and final disposition of the Action as against Defendants; and (b) the Releases provided for herein.

5.      Pursuant to the Judgment, or the Alternate Judgment, if applicable, without further action by anyone, upon the Effective Date of the Settlement, Lead Plaintiffs and each of the other Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, trustees, predecessors, successors, and assigns in their capacities as such only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against Defendants and the other Defendants' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees.  This Release shall not apply to any of the Excluded Plaintiffs' Claims.

6.      Pursuant to the Judgment, or the Alternate Judgment, if applicable, without further action by anyone, upon the Effective Date of the Settlement, Defendants and each of the other Defendants' Releasees, on behalf of themselves, and their respective heirs, executors, administrators, trustees, predecessors, successors, and assigns in their capacities as such only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against Lead Plaintiffs and the other Plaintiffs' Releasees, and

shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiffs' Releasees. This Release shall not apply to any of the Excluded Defendants' Claims.

7.     Notwithstanding ¶¶ 5-6 above, nothing in the Judgment, or the Alternate Judgment, if applicable, shall bar any action by any of the Parties to enforce or effectuate the terms of this Stipulation or the Judgment, or Alternate Judgment, if applicable.

## THE SETTLEMENT CONSIDERATION

8.     **Total Settlement Consideration.**  In consideration of the settlement of the Released Plaintiffs' Claims against Defendants and the other Defendants' Releasees, SCANA will provide or cause to be provided to the Settlement Class total consideration equal to $192,500,000.00 in value, which will consist of $160,000,000.00 paid in cash and $32,500,000.00 paid in freely-tradable Dominion Energy common stock; *provided, however*, that SCANA shall have the option to pay the $32,500,000.00 value of the Settlement Shares or any part thereof in cash of the same value any point prior to the delivery of the Settlement Shares.

9.     **Payment of Cash Settlement Amount.**  Defendants shall pay or cause to be paid the Cash Settlement Amount into the Escrow Account within twenty (20) business days after the later of (i) the date of entry by the Court of an order preliminarily approving this Settlement, or (ii) the date that Lead Counsel provides Defendants' Counsel with written payment instructions, including a valid W-9 for the Settlement Fund.

10.     **Issuance and Delivery of Settlement Shares.**  No later than ten (10) business days after the date of entry by the Court of the Judgment or Alternate Judgment finally approving the Settlement, and notwithstanding the existence of any timely filed objections to the Settlement, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, SCANA

shall cause Dominion Energy (or its successor entity) to issue the Settlement Shares and shall cause the Settlement Shares to be delivered to the Securities Brokerage Account in accordance with written instructions from Lead Counsel.  The following terms and conditions shall apply to the issuance and delivery of the Settlement Shares:

(a)    The number of Settlement Shares that Dominion Energy shall issue will be determined on the date of entry of the Judgment or Alternate Judgment finally approving the Settlement (the "Valuation Date") and will be calculated by dividing $32,500,000.00 by the average daily adjusted closing price of Dominion Energy common stock over the five (5) trading days immediately preceding the Valuation Date (the "Dominion Energy 5-Day Average Closing Price"); *provided, however*, that, in the event that Dominion Energy shareholder approval is required to issue the Settlement Shares because the number of shares needed to reach $32,500,000.00 exceeds 19.9% of the issued and outstanding common stock of Dominion Energy as of the Valuation Date, Dominion Energy will have the option to either (i) pay in cash the amount corresponding to the number of shares in excess of 19.9% (the "Excess Settlement Shares") and issue the remaining Settlement Shares, no later than ten (10) business days after entry of the Judgment or Alternate Judgment, or (ii) seek shareholder approval, as required, to issue, no later than sixty (60) calendar days after the Valuation Date, the Excess Settlement Shares; *provided further* that the total number of Settlement Shares to be issued will be adjusted to reflect any subdivision or combination in Dominion Energy common stock by stock splits, reverse stock splits, reorganization, recapitalization, or other similar transaction beginning with 5th trading day immediately preceding the Valuation Date through and including the date the Settlement Shares are issued by Dominion Energy and delivered to the Securities Brokerage Account.

(b)     All Settlement Shares will be duly and validly issued, fully paid, non-assessable, listed on the New York Stock Exchange (or any other stock exchange or market on which Dominion Energy's common stock is then listed or quoted), and free from all liens and encumbrances, and will be either registered under the Securities Act of 1933 ("Securities Act") or exempt from registration under Section 3(a)(10) of the Securities Act ("Section 3(a)(10)"); *provided, however*, that should Dominion Energy choose to register the Settlement Shares, the registration of the Settlement Shares will not extend the deadline by which the Settlement Shares must be issued and delivered as stated in this ¶ 10.

(i)     The Settlement Shares shall be registered, or available for resale without registration under the Securities Act, upon issuance and delivery and shall be issued and delivered in accordance with any applicable state securities laws, rules, or regulations ("State Blue Sky Laws") at Dominion Energy's expense.

(ii)     In order to qualify for the exemption provided by Section 3(a)(10), the Parties and their counsel will take all steps necessary to ensure that each of the following conditions will be satisfied: (i) Settlement Class Members shall be given adequate notice of the Settlement Fairness Hearing; (ii) the Settlement Fairness Hearing shall be open to all Settlement Class Members; (iii) there shall be no improper impediments to the appearance by any Settlement Class Member at the Settlement Fairness Hearing; (iv) the Court shall be advised before the Settlement Fairness Hearing that Dominion Energy will rely on the Section 3(a)(10) exemption based on the Court's approval of the issuance of the Settlement Shares as part of the consideration provided in exchange for the settlement and release of the Released Plaintiffs' Claims; (v) the Settlement Fairness Hearing shall include consideration of the fairness of the terms and conditions of the issuance of the Settlement Shares in exchange for the settlement and release of the Released

Plaintiffs' Claims against the Defendants' Releasees; and (vi) the order to be entered by the Court shall approve the fairness to the Settlement Class Members of the terms and conditions of the issuance of the Settlement Shares in exchange for the settlement and release of the Released Plaintiffs' Claims against the Defendants' Releasees.

(iii)     If the Settlement Shares are to be issued pursuant to the exemption from registration under Section 3(a)(10), SCANA must confirm to Lead Counsel that Dominion Energy has obtained the written opinion of counsel described below, but only if and when such opinion of counsel is required by the transfer agent or the NYSE in connection with the issuance and listing of the Settlement Shares, and at no cost to the Settlement Class, the Settlement Fund, or Plaintiffs' Counsel; such written opinion of counsel to be substantially to the effect that the issuance and delivery of the Settlement Shares to the Securities Brokerage Account, Lead Counsel, or Authorized Claimants, and the subsequent distribution of Settlement Shares by Lead Counsel to Authorized Claimants or sale of Settlement Shares by Lead Counsel are exempt from registration under the Securities Act under Section 3(a)(10) of that Act (the "Section 3(a)(10) Opinion").

(c)     From the date of this Stipulation through the date of issuance and delivery of the Settlement Shares to the Securities Brokerage Account, no capital contributions or capital calls will be required from holders of Dominion Energy common stock or the Settlement Class.

(d)     The Settlement Shares will be issued by Dominion Energy (or its successor entity) only in certificate-less (book entry) form, and be registered in the name(s) as provided in the written instructions from Lead Counsel and the Claims Administrator, as set forth below. Dominion Energy (or its successor entity) will not issue or otherwise provide any physical certificates for any of the Settlement Shares.

(i)      Upon issuance and delivery of the Settlement Shares into the Securities Brokerage Account, Lead Counsel will have 45 calendar days to provide notice to SCANA that they will exercise the option, in their sole discretion, to sell all or any portion of the Settlement Shares, including any shares awarded to Plaintiffs' Counsel for attorneys' fees. The net cash proceeds from any sale of the Class Settlement Shares will be deposited in the Escrow Account pending distribution to Authorized Claimants.

(ii)      If Lead Counsel do not provide notice to SCANA that they will exercise the option to sell all or any portion of the Class Settlement Shares within 45 calendar days, the Class Settlement Shares that are not to be sold by Lead Counsel shall be transferred from the Securities Brokerage Account to Dominion Energy's (or its successor entity's) transfer agent for the benefit of the Settlement Class pending distribution to Authorized Claimants. Any such Class Settlement Shares will be transferred to Dominion Energy's (or its successor entity's) transfer agent in accordance with written instructions provided by SCANA's Counsel to Lead Counsel and the Claims Administrator.

(iii)      If Class Settlement Shares are transferred to the transfer agent for distribution to Authorized Claimants, those Class Settlement Shares shall be distributed to Authorized Claimants in accordance with written instructions provided by Lead Counsel or the Claims Administrator, with the authorization of SCANA's Counsel. Such instructions will provide for, among other things, posting the Class Settlement Shares electronically to the accounts of Authorized Claimants via the Direct Registration System ("DRS") in the amounts directed by the Claims Administrator or Lead Counsel. Dominion Energy (or its successor entity) shall authorize the transfer agent to disburse Class Settlement Shares in accordance with such instructions.

(e)    SCANA will be responsible for the payment of all costs associated with the issuance of the Settlement Shares, including without limitation, (i) all costs related to the transfer of the Settlement Shares to the Securities Brokerage Account; (ii) all costs of its transfer agent related to the issuance of the Settlement Shares; and (iii) all costs associated with listing the Settlement Shares on the New York Stock Exchange (or any other stock exchange or market on which Dominion Energy's common stock is then listed or quoted); however, all costs associated with distributing the Settlement Shares to Authorized Claimants and Plaintiffs' Counsel will be paid from the Escrow Account and will constitute Notice and Administration Costs.

(f)    SCANA shall cause Dominion Energy (or its successor entity) to direct its transfer agent to provide Lead Counsel or the Claims Administrator with instructions concerning all information Dominion Energy's (or its successor entity's) transfer agent requires, as well as all formatting requirements, to enable the posting of Class Settlement Shares electronically on the DRS to the accounts of Authorized Claimants.  Such instructions shall include, but are not limited to, information concerning the physical or electronic medium for the delivery of such information to the transfer agent and any requirements for satisfying Securities Transfer Association ("STA") guidelines so that the Claim Form to be sent to potential Settlement Class Members captures all required information in the appropriate format.  SCANA shall cause Dominion Energy (or its successor entity) to direct its (or its successor entity's) transfer agent to provide such instructions and review and provide comments, if any, on the proposed Claim Form, annexed hereto as Exhibit 2 to Exhibit A, within five (5) calendar days of the filing of the motion for preliminary approval of the Settlement.  Any changes made to the Claim Form at the request of Dominion Energy's (or its successor entity's) transfer agent shall not be deemed material changes to the Claim Form.

(g)     Lead Counsel and the Claims Administrator shall have the responsibility, on behalf of the Settlement Class, for instructing SCANA and/or Dominion Energy (or its successor entity), its counsel, and Dominion Energy's transfer agent concerning the information for posting Class Settlement Shares to the accounts of Authorized Claimants on the DRS.  Any such directions given by Lead Counsel and the Claims Administrator shall be set forth in a writing and accompanied by such information, and in such physical or electronic medium as specified by Dominion Energy's (or its successor entity's) transfer agent, as set forth in the preceding subparagraph, to permit the Class Settlement Shares to be immediately posted electronically to the accounts of Authorized Claimants on the DRS, in such amounts as are appropriate (the "Settlement Shares Instructions").

(h)     Lead Counsel, Dominion Energy (and any successor entity), the Claims Administrator, and all entities under the direction of Lead Counsel shall cooperate with Dominion Energy's (or its successor entity's) transfer agent to provide such information as is required for the Settlement Shares Instructions.

(i)     Each of Lead Counsel and the Claims Administrator has the right to rely on the instructions provided by Dominion Energy's (or its successor entity's) transfer agent as to the information it requires, as well as the formatting requirements to enable the posting of the Settlement Shares electronically on the DRS to the accounts of Authorized Claimants.  Dominion Energy's (or its successor entity's) transfer agent, in its sole discretion, may request additional information or reformatting in order to effect the posting to the accounts of the Authorized Claimants on the DRS.

(j)     Each of Dominion Energy and its transfer agent (and its successor entity and its transfer agent) has the right to rely on the accuracy and completeness of the information

provided by Lead Counsel, the Claims Administrator, or Authorized Claimants with respect to the issuance and distribution of the Settlement Shares.

(k)    Neither the Defendants, Dominion Energy, nor Dominion Energy's (or its successor entity's) transfer agent shall have any responsibility or liability regarding the accuracy or completeness of any information provided by Lead Counsel, the Claims Administrator, or any Authorized Claimant in respect to the issuance or distribution of the Settlement Shares, or any losses incurred in connection therewith; however, as discussed above, SCANA and/or Dominion Energy and its transfer agent (and its successor entity and its transfer agent) are responsible for providing complete and accurate instructions to Lead Counsel and the Claims Administrator with respect to the information and formatting required in respect to the issuance or distribution of the Settlement Shares and SCANA (and its successor entity) shall be liable for any fees, costs, or losses incurred in connection with Dominion Energy's or its transfer agent's (or its successor entity's or its successor entity's transfer agent's) failure to provide accurate and complete instructions.

(l)    Lead Counsel shall provide Defendants' Counsel with notice of the Settlement Shares Instructions at the same time such Settlement Shares Instructions are delivered to Dominion Energy's (or its successor entity's) transfer agent.  Lead Counsel shall not issue the Settlement Shares Instructions with respect to the Class Settlement Shares allocable to Authorized Claimants prior to the entry of a Class Distribution Order authorizing the distribution of the Class Settlement Shares, in whole or in part, to Authorized Claimants.

(m)    In the event of a CIC prior to the issuance and delivery of the Settlement Shares to the Securities Brokerage Account: (i) if holders of Dominion Energy common stock receive all cash in the CIC Transaction, then in lieu of the Settlement Shares, Dominion Energy or

the successor entity shall pay cash in an amount equal to $32,500,000.00; and (ii) if the holders of Dominion Energy common stock receive consideration in such CIC Transaction that is not entirely composed of cash, then Dominion Energy or the successor entity shall continue to be obligated to provide the Settlement Shares; *provided, however*, in such event, the Settlement Shares shall be the stock of the successor entity in an amount equal to $32,500,000.00 divided by the volume weighted average daily adjusted closing price of the successor entity's common stock on such stock exchange or market on which that stock is then listed over the five (5) trading days immediately preceding the Valuation Date (the "Successor 5-Day Average Closing Price"). Additionally, in the event of a CIC prior to the issuance and delivery of the Settlement Shares to the Securities Brokerage Account, with respect to the Settlement Share component of the Settlement Amount, the successor entity shall have the option in its sole discretion to pay all or part of the value of the Settlement Shares in cash in an amount equal to no less than $32,500,000.00. Any amounts paid in cash pursuant to this subparagraph (m) shall be deemed part of the Cash Settlement Fund. For the avoidance of doubt, the value of the total Settlement Shares will be no less than $32,500,000.00 as of the Valuation Date.

## USE OF SETTLEMENT FUND

11.    The Settlement Fund shall be used to pay: (a) any Taxes; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; (d) any attorneys' fees awarded by the Court; and (e) any other costs and fees approved by the Court. The balance remaining in the Settlement Fund (including, if applicable, the net cash proceeds from the sale of any Class Settlement Shares deposited into the Escrow Account in accordance with ¶ 10(d)(i) above), that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶ 23-35 below.

12.    Except as provided herein or pursuant to orders of the Court, any sums required to be held in escrow pursuant to this Stipulation shall remain in the Escrow Account prior to the Effective Date.  All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court. The Escrow Agent shall invest any funds in the Escrow Account exclusively in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that any residual cash balances up to the amount that is insured by the FDIC may be deposited in any account that is fully insured by the FDIC.  In the event that the yield on United States Treasury Bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States.  Additionally, if short-term placement of the funds is necessary, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States.

13.    The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Lead Counsel, as administrators of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k) for the Settlement Fund.  Lead Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund.  The Defendants' Releasees shall not have any liability or

responsibility for any such Taxes.  Upon written request, Defendants will provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e).  Lead Counsel, as administrators of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

14.    All Taxes shall be paid out of the Settlement Fund, and shall be timely paid, or caused to be paid, by Lead Counsel and without further order of the Court.  Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.  Defendants' Releasees shall have no responsibility or liability for the acts or omissions of Lead Counsel or their agents with respect to the payment of Taxes, as described herein.

15.    The Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, neither Defendants, Dominion Energy, any of the Defendants' Releasees, nor any other person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claims submitted, the collective amount of Recognized Claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

16.     Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or Dominion Energy or further order of the Court, all Notice and Administration Costs actually incurred and paid or payable.  Such costs and expenses shall include, without limitation, the actual costs of printing and mailing the Notice, publishing the Summary Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and administering the Settlement (including processing the submitted Claims), and the fees, if any, of the Escrow Agent.  In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to Defendants, Dominion Energy, any of the other Defendants' Releasees, or any other person or entity who or which paid any portion of the Settlement Amount.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

17.     Lead Counsel will apply to the Court for a collective award of attorneys' fees to Plaintiffs' Counsel to be paid solely from (and out of) the Settlement Fund.  Lead Counsel also will apply to the Court for payment of Litigation Expenses, which may include a request for reimbursement of Lead Plaintiffs' costs and expenses directly related to their representation of the Settlement Class, to be paid solely from (and out of) the Cash Settlement Fund.  Lead Counsel's application for an award of attorneys' fees and/or Litigation Expenses (the "Fee and Expense Application") is not the subject of any agreement between Defendants, Dominion Energy, and Lead Plaintiffs other than what is set forth in this Stipulation.

18.    Any attorneys' fees that are awarded shall be paid proportionally from the Cash Settlement Fund and the Settlement Shares (or the net proceeds from the sale of the Settlement Shares), provided that the portion of the Settlement Shares (or the net proceeds from the sale of the Settlement Shares) paid as attorneys' fees shall not exceed one-third of all Settlement Shares. Payment of expenses shall be paid from the Cash Settlement Fund.

19.    Any attorneys' fees and Litigation Expenses that are awarded by the Court (the "Fee and Expense Award") shall be paid to Lead Counsel either (a) if paid from (and out of) the Cash Settlement Fund, immediately upon the Fee and Expense Award; or (b) if paid from (and out of) the Settlement Shares, immediately upon the Fee and Expense Award or, if the Settlement Shares have not yet been delivered to the Securities Brokerage Account at the time of the Fee and Expense Award, immediately upon the delivery of the Settlement Shares to the Securities Brokerage Account in accordance with ¶ 10 above, notwithstanding any appeals or potential for appeal from the Fee and Expense Award, timely filed objections to the Fee and Expense Award, or collateral attack on the Settlement or any part of the Settlement.

20.    The payment of the Fee and Expense Award to Lead Counsel shall be subject to Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees and/or Litigation Expenses is reduced or reversed and such order reducing or reversing the award has become Final.  Lead Counsel shall make the appropriate refund or repayment in full no later than thirty (30) calendar days after: (a) receiving from Defendants' Counsel notice of the termination

of the Settlement; or (b) any order reducing or reversing the award of attorneys' fees and/or Litigation Expenses has become Final.

21.    An award of attorneys' fees and/or Litigation Expenses is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein.  Neither Lead Plaintiffs nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses.

22.    Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.  Defendants' Releasees shall have no responsibility for or liability whatsoever with respect to the allocation or award of attorneys' fees or Litigation Expenses.  The attorneys' fees and Litigation Expenses that are awarded to Plaintiffs' Counsel shall be payable solely from the Settlement Fund.

## NOTICE AND SETTLEMENT ADMINISTRATION

23.    As part of the Preliminary Approval Order, Lead Counsel shall seek appointment of a Claims Administrator.  The Claims Administrator shall administer the Settlement, including but not limited to the process of receiving, reviewing, and approving or denying Claims, under Lead Counsel's supervision and subject to the jurisdiction of the Court.  Lead Counsel have provided Defendants with an opportunity to comment on their selection of the Claims Administrator; however, other than SCANA's obligation to provide its securities holders records as provided in ¶ 24 below, none of the Defendants, Dominion Energy, nor any other Defendants' Releasees, shall have any future involvement in or any responsibility, authority, or liability whatsoever for the selection of the Claims Administrator, the Plan of Allocation, the administration of the Settlement, the Claims process, or disbursement of the Net Settlement Fund, and shall have

no liability whatsoever to any person or entity, including, but not limited to, Lead Plaintiffs, any other Settlement Class Members, or Lead Counsel in connection with the foregoing. Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

24.    In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Lead Counsel shall cause the Claims Administrator to mail the Notice and Proof of Claim Form to those members of the Settlement Class as may be identified through reasonable effort.  Lead Counsel shall also cause the Claims Administrator to have the Summary Notice published in accordance with the terms of the Preliminary Approval Order to be entered by the Court.  For the purposes of identifying and providing notice to the Settlement Class, within ten (10) business days of the date of entry of the Preliminary Approval Order, SCANA shall provide or cause to be provided to the Claims Administrator in electronic format (at no cost to the Settlement Fund, Lead Counsel, or the Claims Administrator) reasonably available transfer records containing names and addresses of the purchasers of SCANA common stock during the Class Period.

25.    No later than ten (10) calendar days following the filing of this Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.* ("CAFA").  Defendants are solely responsible for the costs of the CAFA notice and administering the CAFA notice.  At least seven (7) calendar days before the Settlement Fairness Hearing, Defendants shall cause to be served on Lead Counsel and filed with the Court proof, by affidavit or declaration, regarding compliance with CAFA § 1715(b).

26.    The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share

of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Notice attached hereto as Exhibit 1 to Exhibit A, or in such other plan of allocation as the Court approves).

27.    The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Stipulation and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court.  Lead Plaintiffs and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in this Action.  Defendants, Dominion Energy, and the other Defendants' Releasees shall not object in any way to the Plan of Allocation or any other plan of allocation in this Action.  Defendants, Dominion Energy, and the other Defendants' Releasees shall not have any involvement with or liability, obligation, or responsibility whatsoever for the application of the Court-approved plan of allocation.

28.    Any Settlement Class Member who does not submit a valid Claim will not be entitled to receive any distribution from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or, the Alternate Judgment, if applicable, to be entered in the Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against the Defendants' Releasees with respect to the Released Plaintiffs' Claims in the event that the Effective Date occurs with respect to the Settlement.

29.    Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval.

Defendants, Dominion Energy, and the other Defendants' Releasees shall not be permitted to review, contest, or object to any Claim, or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim for payment. Lead Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claims submitted in the interests of achieving substantial justice.

30.     For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)     Each Claimant shall be required to submit a Claim in paper form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, or in electronic form, in accordance with the instructions for the submission of such Claims, and supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)     All Claims must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice. Any Settlement Class Member who fails to submit a Claim by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by Order of the Court such Settlement Class Member's Claim is accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternate Judgment, if applicable, and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Defendants' Releasees with respect to any Released Plaintiffs' Claim. Provided that it is mailed by the claim-submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if received

with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

(c)     Each Claim shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Stipulation and the plan of allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d)     Claims that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim submitted. The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)     If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the date of mailing of the notice required in subparagraph (d) above or a lesser time period if the Claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

31.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim.  No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claims.

32.     Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants.

33.     Payment pursuant to the Class Distribution Order shall be final and conclusive against all Claimants.  All Settlement Class Members whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternate Judgment, if applicable, to be entered in this Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Defendants' Releasees with respect to any and all of the Released Plaintiffs' Claims.

34.     No person or entity shall have any claim against Lead Plaintiffs, Lead Counsel, the Claims Administrator, or any other agent designated by Lead Counsel, arising from the investment, disposition, or distribution of the Settlement Fund or Net Settlement Fund, the determination,

administration, calculation, or payment of any claim, the payment or withholding of Taxes (including interest and penalties) owed by the Settlement Fund, made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or any order of the Court. Defendants, and Defendants' Counsel, and Lead Plaintiffs' damages expert and all other Defendants' Releasees shall have no liability whatsoever for the investment, disposition, or distribution of the Settlement Fund or the Net Settlement Fund, the plan of allocation, or the determination, administration, calculation, or payment of any claim or nonperformance of the Claims Administrator, the payment or withholding of Taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

35.     All proceedings with respect to the administration, processing, and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.  All Settlement Class Members, other Claimants, and parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

**TERMS OF THE JUDGMENT**

36.     If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form attached hereto as Exhibit B.

37.     The Judgment shall contain a bar order ("Bar Order"), substantially in the form set forth in Exhibit B hereto, that shall, upon the Effective Date, consistent with the PSLRA, 15 U.S.C. § 78u-4(f)(7), permanently bar, extinguish, and discharge to the fullest extent permitted by law any and all claims for contribution or indemnification arising out of any Released Plaintiffs' Claim

where the injury to the person or entity bringing the claim is his, her, or its liability to the Settlement Class, (a) by any person or entity other than a Defendants' Releasee against a Defendants' Releasee or (b) by any Defendants' Releasee against any person or entity other than a Defendants' Releasee, *provided, however*, that the Bar Order shall not bar or release any of the Excluded Plaintiffs' Claims. Consistent with the PSLRA, 15 U.S.C. § 78u-4(f)(7)(B), any verdict or judgment that Lead Plaintiffs or any other Settlement Class Member may obtain on behalf of the Settlement Class or a Settlement Class Member against any person or entity subject to the Bar Order shall be reduced by the greater of (a) an amount that corresponds to the percentage responsibility of the Defendants' Releasees for common damages; or (ii) the portion of the Settlement Amount paid by or on behalf of the Defendants to the Settlement Class or Settlement Class Member for common damages.

## CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

38.     The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

(a)     The Court has entered the Preliminary Approval Order, substantially in the form set forth in Exhibit A attached hereto, as required by ¶ 3 above;

(b)     The Cash Settlement Amount has been paid into the Escrow Account as required by ¶ 9 above;

(c)     The Settlement Shares have been issued and delivered to the Securities Brokerage Account as required by ¶ 10 above;

(d)     Lead Plaintiffs have not exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation;

(e)     Defendants have not exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation; and

(f)     The Court has approved the Settlement as described herein, following notice to the Settlement Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and entered the Judgment, and the Judgment has become Final, or the Court has entered an Alternate Judgment, and none of the Parties seek to terminate the Settlement, and the Alternate Judgment has become Final.

39.     Upon the occurrence of all of the events referenced in ¶ 38 above, any and all remaining interest or right of Defendants, Dominion Energy, or their insurers in or to the Settlement Fund, if any, shall be absolutely and forever extinguished and the Releases herein shall be effective.

40.     If (i) Lead Plaintiffs exercise their right to terminate the Settlement as provided in this Stipulation; (ii) Defendants exercise their right to terminate the Settlement as provided in this Stipulation; (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur, then:

(a)     The Settlement and the relevant portions of this Stipulation shall be canceled and terminated;

(b)     Lead Plaintiffs and Defendants shall revert to their respective positions in the Action as of immediately prior to the execution of the Term Sheet on October 3, 2019;

(c)     The terms and provisions of this Stipulation, with the exception of this ¶ 40 and ¶¶ 16, 20, 43 and 63, shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and any Judgment, or Alternate Judgment, if applicable, or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*;

(d)     Within five (5) business days after joint written notification of termination is sent by Defendants' Counsel and Lead Counsel to the Escrow Agent, (i) the Cash Settlement Fund, including, if applicable, the net cash proceeds from the sale of any Class Settlement Shares (including accrued interest thereon and change in value as a result of the investment of the cash held in the Escrow Account), less any Notice and Administration Costs actually incurred, paid, or payable and less any Taxes paid, due, or owing, shall be refunded by the Escrow Agent to Defendants (or such other persons or entities as Defendants may direct); and (ii) if applicable, any Class Settlement Shares shall be returned to Dominion Energy; and

(e)     Any attorneys' fees and expenses paid to Lead Counsel, in the form of cash and/or Settlement Shares, shall be refunded in accordance with ¶ 20 above.

41.     It is further stipulated and agreed that Lead Plaintiffs, provided they unanimously agree amongst themselves, and SCANA shall each have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so ("Termination Notice") to each of the other Parties within thirty (30) calendar days of: (a) the Court's final refusal to enter the Preliminary Approval Order in any material respect; (b) the Court's final refusal to approve the Settlement or any material part thereof; (c) the Court's final refusal to enter the Judgment in any material respect as to the Settlement; (d) the date upon which the Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Fourth Circuit or the United States Supreme Court; or (e) the date upon which an Alternate Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Fourth Circuit or the United States Supreme Court, and the provisions of ¶ 40 above shall apply.  However, any decision or proceeding, whether in this Court or any appellate court, with respect to an application for attorneys' fees or payment of Litigation Expenses or with respect to any plan of allocation shall

not be considered material to the Settlement, shall not affect the finality of any Judgment or Alternate Judgment, if applicable, and shall not be grounds for termination of the Settlement.

42.    In addition to the grounds set forth in ¶ 41 above:

(a)    Lead Plaintiffs, provided they unanimously agree amongst themselves, shall have the unilateral right to terminate the Settlement in the event that a failure to (i) pay the Cash Settlement Amount into the Escrow Account in accordance with ¶ 9 above, or (ii) issue and deliver the Settlement Shares to the Securities Brokerage Account in accordance with all of the requirements stated in ¶ 10 above is not cured within 5 business days after Lead Plaintiffs provide written notice in accordance with ¶ 61 below.

(b)    SCANA shall have the unilateral right to terminate the Settlement in the event that Settlement Class Members timely and validly requesting exclusion from the Settlement Class meet the conditions set forth in Defendants' confidential supplemental agreement with Lead Plaintiffs (the "Supplemental Agreement"), in accordance with the terms of that agreement.  The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein and in the Notice, to the extent necessary, or as otherwise provided in the Supplemental Agreement) unless the Court otherwise directs or a dispute arises between Lead Plaintiffs and Defendants concerning its interpretation or application, in which event Lead Plaintiffs and Defendants shall submit the Supplemental Agreement to the Court in camera and request that the Court afford it confidential treatment.

## NO ADMISSION OF WRONGDOING

43.    Neither the Term Sheet, this Stipulation (whether or not consummated), including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation

43

that may be approved by the Court), the negotiations leading to the execution of the Term Sheet and this Stipulation, nor any proceedings taken pursuant to or in connection with the Term Sheet, this Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

        (a)     Shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Lead Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

        (b)     Shall be offered against any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)     Shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; *provided, however*, that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

## MISCELLANEOUS PROVISIONS

44.     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.  Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

45.     Defendants warrant that, as to the payments made or to be made on behalf of them, at the time of entering into this Stipulation and at the time of such payment they, or to the best of their knowledge any persons or entities contributing to the payment of the Settlement Amount, were not insolvent, nor will the payment required to be made by or on behalf of them render them insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof.  This representation is made by each of the Defendants and not by their counsel.

46.     In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Cash Settlement Fund or issuance or delivery of any Settlement Shares or any portion thereof by or on behalf of Defendants or Dominion Energy to be a preference, voidable transfer, fraudulent transfer, or similar transaction and any portion of the Cash Settlement Fund and/or the Settlement Shares is required to be returned, and such amount is not promptly deposited into the Cash Settlement Fund by others and/or the equivalent value of

such Settlement Shares is not replaced by others, then, at the election of Lead Plaintiffs, Lead Plaintiffs and Defendants shall jointly move the Court to vacate and set aside the Releases given and the Judgment or Alternate Judgment, if applicable, entered in favor of Defendants and the other Releasees pursuant to this Stipulation, in which event the Releases and Judgment, or Alternate Judgment, if applicable, shall be null and void, and the Parties shall be restored to their respective positions in the Action as provided in ¶ 40 above and any cash amounts in the Escrow Account and, if applicable, any previously issued Settlement Shares (less any Taxes paid, due, or owing with respect to the Settlement Fund and less any Notice and Administration Costs actually incurred, paid, or payable) shall be returned as provided in ¶ 40 above.

47. The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Lead Plaintiffs or any other Settlement Class Members against the Defendants' Releasees with respect to the Released Plaintiffs' Claims. No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution, defense, or settlement of this Action. The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, including through a mediation process supervised and conducted by Judge Layn R. Phillips, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

48. While retaining their right to deny that the claims asserted in the Action were meritorious, Defendants, Dominion Energy, and their respective counsel, in any statement made to any media representative (whether or not for attribution), will not assert that the Action was

commenced or prosecuted in bad faith, nor will they deny that the Action was commenced and prosecuted in good faith and is being settled voluntarily after consultation with competent legal counsel. In all events, Lead Plaintiffs and their counsel and Defendants, Dominion Energy, and their respective counsel shall not make any accusations of wrongful or actionable conduct by any Party concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

49. The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived except by a writing signed on behalf of Lead Plaintiffs and Defendants (or their successors-in-interest).

50. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

51. The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Plaintiffs' Counsel and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Settlement Class Members.

52. The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

53. This Stipulation and its exhibits and the Supplemental Agreement constitute the entire agreement among Lead Plaintiffs and Defendants concerning the Settlement and this Stipulation and its exhibits. All Parties acknowledge that no other agreements, representations,

warranties, or inducements have been made by any Party concerning this Stipulation, its exhibits, or the Supplemental Agreement other than those contained and memorialized in such documents.

54.    This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

55.    This Stipulation shall be binding upon and inure to the benefit of the successors and assigns of the Parties, including any and all Releasees and any corporation, partnership, or other entity into or with which any Party may merge, consolidate, or reorganize.

56.    The construction, interpretation, operation, effect, and validity of this Stipulation, the Supplemental Agreement, and all documents necessary to effectuate it shall be governed by the internal laws of the State of South Carolina without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

57.    Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in the Court.

58.    This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

59.    All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

60.    Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

61.    If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or facsimile or email transmission, with confirmation of receipt.  Notice shall be provided as follows:

If to Lead Plaintiffs or Lead Counsel:    Bernstein Litowitz Berger & Grossmann LLP
Attn:  John C. Browne, Esq.
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 554-1400
Facsimile: (212) 554-1444
Email:  johnb@blbglaw.com

Labaton Sucharow LLP
Attn:  James W. Johnson, Esq.
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email:  jjohnson@labaton.com

If to Defendants SCANA, Stowe,    McGuireWoods LLP
Haygood, or Roquemore:    Attn:  Brian E. Pumphrey, Esq.
800 East Canal Street
Richmond, VA 23219
Telephone:  (804) 775-7745
Facsimile:  (804) 698-2018
Email:  bpumphrey@mcguirewoods.com

If to Defendant Marsh:          Cadwalader, Wickersham & Taft LLP
Attn:  Anne M. Tompkins, Esq.
227 West Trade St.
Charlotte, NC 28202
Telephone: (704) 348-5222
Facsimile:  (704) 348-5200
Email:  anne.tompkins@cwt.com

If to Defendant Addison:       Alston & Bird
Attn:  John A. Jordak, Jr., Esq.
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:  (404) 881-7868
Facsimile:   (404) 253-8358
Email:  john.jordak@alston.com

If to Defendant Byrne:         Wilmer Cutler Pickering Hale and Dorr, LLP
Attn:  Matthew T. Martens, Esq.
1875 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone:  (202) 663-6921
Facsimile:   (202) 663-6363
Email:  Matthew.Martens@wilmerhale.com

62.     Except as otherwise provided herein, each Party shall bear its own costs.

63.     Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed, and proceedings in connection with the Stipulation confidential.

64.     All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement.

65.     No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole

responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

**IN WITNESS WHEREOF,** the Parties have caused this Stipulation to be executed, by their duly authorized attorneys, as of December 20, 2019.

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

By: _____

John C. Browne *(admitted pro hac vice)*
Jeroen Van Kwawegen *(admitted pro hac vice)*
Lauren Ormsbee *(admitted pro hac vice)*
Michael M. Mathai *(admitted pro hac vice)*
Kate W. Aufses *(admitted pro hac vice)*
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
johnb@blbglaw.com
jeroen@blbglaw.com
lauren@blbglaw.com
michael.mathai@blbglaw.com
kate.aufses@blbglaw.com

**LABATON SUCHAROW LLP**

By: _____

James W. Johnson *(admitted pro hac vice)*
Michael H. Rogers *(admitted pro hac vice)*
Irina Vasilchenko *(admitted pro hac vice)*
James Christie *(admitted pro hac vice)*
Philip J. Leggio *(admitted pro hac vice)*
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jjohnson@labaton.com
mrogers@labaton.com
ivasilchenko@labaton.com
jchristie@labaton.com
pleggio@labaton.com

***Lead Counsel for Lead Plaintiffs
and the Settlement Class***

responsibility of the Settlement Class Member, and it is understood that the tax consequences may

vary depending on the particular circumstances of each individual Settlement Class Member.

**IN WITNESS WHEREOF,** the Parties have caused this Stipulation to be executed, by

their duly authorized attorneys, as of December 20, 2019.

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**

By: _____

John C. Browne *(admitted pro hac vice)*
Jeroen Van Kwawegen *(admitted pro hac vice*)
Lauren Ormsbee *(admitted pro hac vice)*
Michael M. Mathai *(admitted pro hac vice)*
Kate W. Aufses *(admitted pro hac vice)*

1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
johnb@blbglaw.com
jeroen@blbglaw.com
lauren@blbglaw.com
michael.mathai@blbglaw.com
kate.aufses@blbglaw.com

**LABATON SUCHAROW LLP**

By: _____

James W. Johnson *(admitted pro hac vice)*
Michael H. Rogers *(admitted pro hac vice)*
Irina Vasilchenko *(admitted pro hac vice)*
James Christie *(admitted pro hac vice)*
Philip J. Leggio *(admitted pro hac vice)*

140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jjohnson@labaton.com
mrogers@labaton.com
ivasilchenko@labaton.com
jchristie@labaton.com
pleggio@labaton.com

*Lead Counsel for Lead Plaintiffs
and the Settlement Class*

51

MCGUIREWOODS LLP

By: _____
    Brian E. Pumphrey *(admitted pro hac vice)*
    Brian D. Schmalzbach *(admitted pro hac vice)*
800 East Canal Street
Richmond, VA 23219
Telephone:  (804) 775-7745
Facsimile:  (804) 698-2018
bpumphrey@mcguirewoods.com
bschmalzbach@mcguirewoods.com

*Counsel for Dominion Energy, Inc. and*
*Defendants SCANA Corporation, Harold C. Stowe,*
*D. Maybank Hagood, and James W. Roquemore*


CADWALADER, WICKERSHAM &
  TAFT LLP


By: _____
    Anne M. Tompkins *(admitted pro hac vice)*
    Jonathan M. Watkins *(admitted pro hac vice)*
227 West Trade St.
Charlotte, NC 28202
Telephone: (704) 348-5222
Facsimile:  (704) 348-5200
anne.tompkins@cwt.com
jonathan.watkins@cwt.com

*Counsel for Defendant Kevin Marsh*

**MCGUIREWOODS LLP**

By: _____
    Brian E. Pumphrey *(admitted pro hac vice)*
    Brian D. Schmalzbach *(admitted pro hac vice)*
800 East Canal Street
Richmond, VA 23219
Telephone:  (804) 775-7745
Facsimile:  (804) 698-2018
bpumphrey@mcguirewoods.com
bschmalzbach@mcguirewoods.com

*Counsel for Dominion Energy, Inc. and*
*Defendants SCANA Corporation, Harold C. Stowe,*
*D. Maybank Hagood, and James W. Roquemore*

**CADWALADER, WICKERSHAM &**
    **TAFT LLP**

By: _____
    Anne M. Tompkins *(admitted pro hac vice)*
    Jonathan M. Watkins *(admitted pro hac vice)*
227 West Trade St.
Charlotte, NC 28202
Telephone: (704) 348-5222
Facsimile:  (704) 348-5200
anne.tompkins@cwt.com
jonathan.watkins@cwt.com

*Counsel for Defendant Kevin Marsh*

**WILMER CUTLER PICKERING HALE AND DORR, LLP**

By: _____

    Timothy J. Perla *(admitted pro hac vice)*
60 State Street
Boston, MA 02109
Telephone:  (617) 526-6696
Facsimile:  (617) 526-5000
Timothy.Perla@wilmerhale.com

    Matthew T. Martens *(admitted pro hac vice)*
1875 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone:  (202) 663-6921
Facsimile:   (202) 663-6363
Matthew.Martens@wilmerhale.com

***Counsel for Defendant Stephen Byrne***

**ALSTON & BIRD**

By: _____

    John A. Jordak, Jr. *(admitted pro hac vice)*
    Meredith J. Kingsley *(admitted pro hac vice)*
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:  (404) 881-7868
Facsimile:  (404) 253-8358
john.jordak@alston.com
meredith.kingsley@alston.com

***Counsel for Defendant Jimmy E. Addison***

#1327420

53

**WILMER CUTLER PICKERING HALE
AND DORR, LLP**

By: _____
    Timothy J. Perla (*admitted pro hac vice*)
60 State Street
Boston, MA 02109
Telephone:  (617) 526-6696
Facsimile:  (617) 526-5000
Timothy.Perla@wilmerhale.com

    Matthew T. Martens (*admitted pro hac vice*)
1875 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone:  (202) 663-6921
Facsimile:  (202) 663-6363
Matthew.Martens@wilmerhale.com

***Counsel for Defendant Stephen Byrne***

**ALSTON & BIRD**

By: _____
    John A. Jordak, Jr. (*admitted pro hac vice*)
    Meredith J. Kingsley (*admitted pro hac vice*)
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:  (404) 881-7868
Facsimile:  (404) 253-8358
john.jordak@alston.com
meredith.kingsley@alston.com

***Counsel for Defendant Jimmy E. Addison***

#1327420