**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**(COLUMBIA DIVISION)**

| | |
|---|---|
| *In re SCANA Corporation Securities Litigation* | Civil Action No. 3:17-CV-2616-MBS |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFFS' MOTION FOR APPROVAL OF
<u>SETTLEMENT DISTRIBUTION PLAN</u>**

Marlon E. Kimpson (D.S.C. Bar No. 7487)
William S. Norton (D.S.C. Bar No. 11343)
Joshua C. Littlejohn (D.S.C. Bar No. 10426)
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, South Carolina 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

*Liaison Counsel for Lead Plaintiffs West Virginia IMB and Blue Sky*

| | |
|---|---|
| James W. Johnson *(admitted pro hac vice)* | John C. Browne *(admitted pro hac vice)* |
| Michael H. Rogers *(admitted pro hac vice)* | Jeroen Van Kwawegen *(admitted pro hac vice)* |
| Irina Vasilchenko *(admitted pro hac vice)* | Lauren Ormsbee *(admitted pro hac vice)* |
| James Christie *(admitted pro hac vice)* | Michael M. Mathai *(admitted pro hac vice)* |
| Philip J. Leggio *(admitted pro hac vice)* | Kate W. Aufses *(admitted pro hac vice)* |
| **LABATON SUCHAROW LLP** | **BERNSTEIN LITOWITZ BERGER** |
| 140 Broadway | **& GROSSMANN LLP** |
| New York, New York 10005 | 1251 Avenue of the Americas |
| Telephone: (212) 907-0700 | New York, New York 10020 |
| Facsimile: (212) 818-0477 | Telephone: (212) 554-1400 |
| | Facsimile: (212) 554-1444 |

*Co-Lead Counsel for Lead Plaintiffs West Virginia IMB and Blue Sky
and Lead Counsel for the Class*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I. BACKGROUND ........................................................................................................2

II. CLAIMS ADMINISTRATION ................................................................................3

    A. The Deficiency Process ..................................................................................3

    B. One Disputed Claim .......................................................................................5

    C. Late Claims – and Final Cut-Off Date ........................................................5

III. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ..................................7

IV. DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND .......................8

    A. Distribution of the Net Settlement Fund ....................................................8

    B. Additional Distribution(s) of the Net Settlement Fund .............................9

V. RELEASE OF CLAIMS .........................................................................................11

VI. CONCLUSION ........................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Cnova N.V. Sec. Litig.*,
  No. 16-cv-00444, 2021 WL 100548 (S.D.N.Y. Jan 12, 2021) ................................................11

*In re Force Protection, Inc. Sec. Litig.*,
  No. 08-cv-845, 2011 WL 13137137 (D.S.C. Aug. 2, 2011) ....................................................11

*Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*,
  No. 12-3824, 2015 WL 12839121 (E.D. Pa. Jan. 21, 2015) ....................................................11

*Perkins v. Am. Nat'l Ins. Co.*,
  No. 05-cv-100, 2012 WL 2839788 (M.D. Ga. July 10, 2012) ................................................10

*Spann v. J.C. Penney Corp.*,
  211 F. Supp. 3d 1244 (C.D. Cal. 2016) ..................................................................................10

*Thorpe v. Walter Inv. Mgmt., Corp.*,
  No. 14-20880, 2018 WL 3672266 (S.D. Fla. May 24, 2018) ..................................................11

**Docketed Cases**

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
  No. 14-cv-3428-NFA (S.D. Tex. Nov. 17, 2020) ....................................................................11

*In re NuSkin Enters., Inc., Sec. Litig.*,
  No. 14-cv-00033-JNP-BCW (D. Utah Aug. 30, 2018) ............................................................10

Plaintiffs, the West Virginia Investment Management Board ("West Virginia IMB") and Stichting Blue Sky Global Equity Active Low Volatility Fund and Stichting Blue Sky Active Large Cap Equity USA Fund ("Blue Sky") (collectively, "Lead Plaintiffs"), respectfully move for entry of the [Proposed] Order Approving Settlement Distribution Plan (the "Class Distribution Order"), which will authorize the distribution of the proceeds of the Settlement of the above-captioned class action (the "Action") to eligible Claimants. The proposed distribution plan (the "Distribution Plan") is set forth in the accompanying Declaration of Alexander P. Villanova in Support of Lead Plaintiffs' Motion for Approval of Settlement Distribution Plan (the "Villanova Declaration" or "Villanova Decl."),[1] submitted on behalf of the Court-approved Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"). Pursuant to the Stipulation, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Fund. *See* Stipulation ¶¶ 23, 27, 29. Nevertheless, we have given Defendants the opportunity to fully review this motion and they have confirmed that they do not oppose this motion.

If entered by the Court, the Class Distribution Order would, among other things, (i) approve Epiq's administrative recommendations accepting and rejecting Claims submitted in connection with the Settlement reached in the Action; (ii) direct the Initial Distribution of the Net Settlement Fund to Claimants whose Claims are accepted by Epiq as valid and approved by the Court; and (iii) approve payment of Epiq's outstanding fees and expenses incurred, and estimated to be incurred, in the administration of the Settlement and the Initial Distribution.

---

[1] Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Villanova Declaration or the Stipulation and Agreement of Settlement, dated as of December 20, 2019 (ECF No. 214-2) (the "Stipulation").

1

I.    **BACKGROUND**

The Court has approved the Settlement entered into by Lead Plaintiffs, on behalf of themselves and the other members of the Settlement Class, and the Defendants in the Action. The Stipulation sets forth the terms of the Settlement, which represents a complete resolution of this Action in return for a payment of $192,500,000.00.

In accordance with the Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement (ECF No. 219) (the "Preliminary Approval Order") entered by the Court, Epiq has mailed the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Litigation Expenses (the "Notice") and the Proof of Claim and Release Form (the "Proof of Claim Form" or "Claim Form" and, together with the Notice, the "Notice Packet") to potential Class Members, brokers, and other nominees of beneficial owners. Villanova Decl. ¶ 2. As stated in the Villanova Declaration, Epiq has disseminated 282,551 Notice Packets to potential Class Members and nominees. *Id.* ¶ 4. The Notice informed Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim Form so that it would be received or postmarked no later than July 25, 2020. *Id.* ¶ 7.

On July 23, 2020, the Court entered its Order and Opinion Approving Settlement (ECF No. 238) granting final approval of the Settlement and its Order and Opinion on Plan of Allocation (ECF No. 239). The Effective Date of the Settlement has occurred.[2] Accordingly, the Net Settlement Fund

---

[2] *See* Stipulation ¶ 38.

may be distributed to Authorized Claimants. In accordance with paragraph 32 of the Stipulation, Lead Plaintiffs respectfully ask the Court to enter the Class Distribution Order.[3]

## II. CLAIMS ADMINISTRATION

As detailed in the Villanova Declaration, through March 25, 2021, Epiq received and processed 60,094 Claims. Villanova Decl. ¶ 7. All Claims received through March 25, 2021, have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation included in the Notice (*id*), and Epiq has worked with Claimants to help them perfect their Claims. *See id*. ¶¶ 21-32.[4] Epiq has determined that 26,491 Claims (including the Late But Otherwise Eligible Claims discussed below) are acceptable in whole or in part to participate in the distribution of the Net Settlement Fund, and that 33,603 claims (including the Disputed Claim discussed below) should be wholly rejected because they are ineligible for payment from the Net Settlement Fund. *See id.* ¶¶ 37-40.

### A. The Deficiency Process

As discussed in the Villanova Declaration, many of the Claims submitted in the Settlement were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by Epiq. *See id*. ¶¶ 20, 26.

---

[3] The Court retained continuing and exclusive jurisdiction over, among other things the disposition of the Settlement Fund and any motion to approve the Class Distribution Order. *See* Order and Opinion Approving Settlement ¶ 18.

[4] In order to allow a proportional allocation of the Net Settlement Fund, and so that a distribution to eligible Claimants would not be delayed, Claims received after March 25, 2021, have not been processed. However, any such Claims, as well as any previously received Claims for which an adjustment was received after the submission of this motion, may be eligible for a future distribution after all distributions to Authorized Claimants are completed. *See* Villanova Decl. ¶ 43(f).

3

If Epiq determined a Claim to be defective or ineligible, a Deficiency Notice (if the Claimant or filer filed a Paper Claim or Online Claim) or a Status Email with an attached Transaction Report (if the Claimant or filer filed an Electronic Claim) was sent by Epiq to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and the steps necessary to cure any curable defect(s) in the Claim. *Id.* ¶¶ 21, 23. The Deficiency Notices and Status Emails advised the Claimant or filer to send to Epiq the appropriate information or documentary evidence to complete the Claim or Epiq would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. ¶¶ 21, 24. Examples of the Deficiency Notice and Status Email/Transaction Report are attached as Exhibits A, B, and C to the Villanova Declaration.

After the responses to the Deficiency Notices and Status Emails were processed, a total of 33,603 Claims (including the Disputed Claim discussed below) remained recommended for rejection by the Court for the following reasons:

- 16,912 Claims had no purchase(s) of SCANA common stock during the Class Period;
- 10,258 Claims did not result in a Recognized Claim pursuant to the Court-approved Plan of Allocation;
- 167 Claims were duplicates;
- 5,039 Claims were withdrawn or voided by the filer; and
- 1,227 Claims had uncured conditions of ineligibility.

Villanova Decl. ¶ 40.

### B. One Disputed Claim

Epiq carefully reviewed Claimants' and filers' responses to the Deficiency Notices and Status Emails and worked with them to resolve deficiencies where possible. *Id.* ¶¶ 20, 22, 27. Consistent with paragraph 30(e) of the Stipulation, the Deficiency Notices and Status Emails specifically advised Claimants or filers of their right to contest the rejection of a Claim and request Court review of the administrative determination of the Claim. *Id.* ¶¶ 21, 24 and Exhibits A & B to the Villanova Declaration.

Epiq received 32 requests for Court review of its administrative determinations. Villanova Decl. ¶ 29. To resolve the disputes without necessitating the Court's intervention, Epiq contacted all persons requesting Court review. *Id.* With respect to those Claimants who Epiq reached, Epiq answered all their questions, fully explained the determination of the Claim's status and facilitated the submission of missing information or documentation where applicable. *Id.* As a result of these efforts, 31 Claims for which Court review had been requested have either been cured or the Claimant withdrew the request for Court review. *Id.*

Currently only one Claim remains disputed and is being submitted to the Court for Resolution (the "Disputed Claim"). *Id.* ¶ 30; *see* Exhibit D to the Villanova Decl. This Claimant has provided no information about his transactions in SCANA common stock and mistakenly believes that Epiq has access to his SCANA common stock transactional information, which, as Epiq has explained, it does not. Villanova Decl. ¶¶ 31-32. Accordingly, this Disputed Claim is deficient as Epiq is unable to calculate the amount of loss under the Plan of Allocation. *Id.* ¶ 31. Lead Counsel concurs in Epiq's recommendation to reject the Disputed Claim. *Id.*

### C. Late Claims – and Final Cut-Off Date

The 60,094 Claims received through March 25, 2021, include 3,720 Claims that were postmarked or received after July 25, 2020, the Court-approved Claim submission deadline, but that

5

were received through March 25, 2021. *Id*. ¶¶ 33, 39. These late Claims have been fully processed and 779 of them are, but for the late submission, otherwise eligible to participate in the Settlement. *Id.* Although these 779 Claims were late, they were received while the processing of timely Claims was ongoing. Due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the Claims administration process or the distribution of the Net Settlement Fund. *Id.* ¶ 33. The Court has discretion to accept Claims received after the submission deadline.[5] Lead Plaintiffs respectfully submit that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it was received after the Court-approved Claim submission deadline if it were submitted while timely Claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Lead Plaintiffs respectfully request that the Court order that no new Claims may be accepted after March 25, 2021, and no further adjustments to previously received Claims that would result in an increased Recognized Claim amount may be made after March 25, 2021, subject to the provisions of paragraph 43(f) of the Villanova Declaration.[6]

Paragraph 43(f) applies to any Claims received or adjusted after March 25, 2021, that would have been eligible for payment or additional payment under the Court-approved Plan of Allocation if

---

[5] *See* Preliminary Approval Order ¶ 8 ("*Unless the Court orders otherwise*, all Claim Forms must be submitted no later than one hundred twenty (120) calendar days after the Notice Date. Notwithstanding the foregoing, Lead Counsel may, at their discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to the Settlement Class.") (emphasis added).

[6] Should an adjustment be received that results in a lower Recognized Claim, that adjustment will be made, and the Recognized Claim will be reduced accordingly prior to a distribution to that Claimant. Villanova Decl. ¶ 34.

6

timely received. At the time when Lead Counsel, in consultation with Epiq, determine that a further distribution is not cost-effective as provided in paragraph 43(e) of the Villanova Declaration, the post-March 25, 2021 Claims and late-adjusted Claims (after payment of fees and expenses as provided in paragraph 43(f) of the Villanova Declaration, at the discretion of Lead Counsel, and to the extent possible) may be paid the distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks.

### III.    FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with Epiq's agreement with Lead Counsel to act as the Claims Administrator for the Settlement, Epiq was responsible for, among other things, disseminating notice to the Class, creating and maintaining the Settlement Website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. Villanova Decl. ¶ 2. As stated in the Villanova Declaration, Epiq's fees and expenses for its work performed through February 28, 2021, are $564,743.08, and its estimated fees and expenses for the Initial Distribution to be performed on behalf of the Class are $33,564.26, which together total $598,307.34.[7] *Id*. ¶ 42 and Exhibit H to the Villanova Decl. To date, Epiq has received payment in the amount of $501,238.19 for its fees and expenses. Villanova Decl. ¶ 42. Accordingly, there is an outstanding balance of $97,069.15 payable to Epiq, which amount includes the estimated fees and expenses to be incurred by Epiq in connection with the Initial Distribution. *Id.* Lead Counsel have reviewed Epiq's

---

[7] The estimated amount of Epiq's fees and expenses incurred in connection with the Initial Distribution will be set aside before the Initial Distribution is conducted so that Epiq can calculate Authorized Claimants' *pro rata* distribution amounts. Should the estimate of fees and expenses to conduct the Initial Distribution of the Net Settlement Fund exceed the actual cost, the excess will be returned to the Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. Villanova Decl. ¶ 42 n.6.

7

invoices and respectfully request, on behalf of Lead Plaintiffs, that the Court approve all of Epiq's outstanding fees and expenses so that they may be paid before the initial distribution is conducted.

## IV.  DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

The Net Settlement Fund is ready to be distributed. Lead Plaintiffs respectfully move the Court for entry of an order approving Epiq's determinations concerning acceptance and rejection of the Claims and approving the proposed Distribution Plan for the distribution of the Net Settlement Fund, as stated in the Villanova Declaration. The Distribution Plan is described below.

### A.  Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, Epiq will initially distribute 90% of the Net Settlement Fund, after deducting all payments previously allowed and the payments approved by the Court through this motion, and after deducting payment of any Taxes, the costs of preparing appropriate tax returns, and any escrow fees (the "Initial Distribution"). *Id.* ¶ 43(a). Epiq will create a 10% Reserve to address any tax liability and claims administration-related contingencies that may arise. *Id*. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution described below. *Id*. ¶ 43(a)(v). *See also id.* ¶¶ 43(d).

In the Initial Distribution, Epiq will distribute the Net Settlement Fund to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claim in accordance with the Court-approved Plan of Allocation. *Id.* ¶ 43(a)(i). If an Authorized Claimant's Recognized Claim is less than $10, no distribution will be made to that Authorized Claimant. *Id*. ¶ 43(a)(ii). A *pro rata* "Distribution Amount" will be calculated for all other Authorized Claimants *Id*. ¶ 43(a)(iii). If an Authorized Claimant's Distribution Amount calculates to less than $100, the full Distribution Amount will be paid to the Authorized Claimant. *Id*. ¶ 43(a)(iv). These Authorized Claimants shall be referred to as "Claims Paid in Full" and will not be eligible for payment in any subsequent distributions. *Id*. After deducting the payments to Claims Paid in Full, the Distribution

8

Amounts for all remaining Authorized Claimants will be recalculated based on their *pro rata* share of 90% of the remaining balance of the Net Settlement Fund. *Id.* ¶ 43(a)(v).

To encourage Authorized Claimants to cash their checks promptly, Lead Plaintiffs propose that all distribution checks bear the notation, "CASH PROMPTLY VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE DATE]." *Id.* ¶ 43(b). Authorized Claimants who do not cash their checks within the time allotted or on the conditions stated in paragraph 43(b) footnote 10 of the Villanova Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to all of these stale-dated checks will be available to be redistributed to other Authorized Claimants in any subsequent distribution, as described below. *Id.* ¶ 43(c).

### B.    Additional Distribution(s) of the Net Settlement Fund

After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than nine (9) months after the Initial Distribution, Epiq will, after consulting with Lead Counsel, conduct the Second Distribution of the Net Settlement Fund. *Id.* ¶ 43(d). In the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, including from the Reserve and the funds for all void stale-dated checks, after deducting Epiq's unpaid fees and expenses incurred in connection with administering the Settlement (including the estimated costs of the Second Distribution), and after deducting payment of any Taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants in the Initial Distribution who do not have Claims Paid in Full and who cashed their Initial Distribution checks and would receive at least $10.00 from the Second Distribution, based on their *pro rata* share of the remaining funds. *Id.*

If, after the Second Distribution, any funds remain in the Net Settlement Fund because of uncashed checks or otherwise, then after Epiq has made reasonable and diligent efforts to have

Authorized Claimants cash their distribution checks, and if cost-effective, subsequent distributions of the funds remaining in the Net Settlement Fund, after deduction of costs and expenses as described above and subject to the same conditions, will take place at six-month intervals thereafter. *Id.*

When Lead Counsel, in consultation with Epiq, determine that further distribution of the funds remaining in the Net Settlement Fund is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after March 25, 2021 and adjustments to Claims received after March 25, 2021, such Claims and adjustments will be processed, and any such Claims that are otherwise valid will be paid in accordance with paragraph 43(f) of the Villanova Declaration. *Id.* ¶ 43(e). If any funds remain in the Net Settlement Fund after payment of these late or late-adjusted Claims, the remaining unclaimed balance of the Net Settlement Fund, after payment of any unpaid fees or expenses incurred in administering the Net Settlement Fund and after the payment of any Taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be contributed to the National Consumer Law Center ("NCLC").[8] *Id.*

NCLC is a private, non-sectarian, not-for-profit organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. *See About Us*, National Consumer Law Center, nclc.org/about-us/about-us.html (last visited Mar. 29, 2021). NCLC was founded in 1969 through a federal grant to provide legal services addressed to two main goals: improving the access of low-income people to the legal system and enabling advocates to seek remedies where needed. *See Our Story*, National Consumer Law Center, nclc.org/about-us/our-story.html (last visited Mar. 29, 2021). Today, NCLC continues to advocate for low-income consumers and provides many resources to civil legal aid and private attorneys representing low-income consumers. *See id.* NCLC's lawyers provide policy analysis, advocacy, litigation, expert-witness services, and training for consumer

advocates throughout the United States. *See id.* "NCLC works to ensure a fair marketplace and access to justice for all consumers, including low-income people, older Americans, students, military service members and veterans," and its "work covers a broad range of consumer issues, including consumer protection, fair credit, debt collection, student loans, mortgages and foreclosures, financial services, bankruptcy, [and] unfair and deceptive acts and practices. . . ." *See Cy Pres Awards*, National Consumer Law Center, nclc.org/about-us/cy-pres-awards.html (last visited Mar. 29, 2021). Federal courts have approved NCLC as a *cy pres* recipient of residual balances of net settlement funds in other settlements.[9]

## V. RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement.[10] Accordingly, Lead Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the

---

[8] *See* Notice ¶ 75.

[9] *See, e.g.*, *In re NuSkin Enters., Inc., Sec. Litig.*, No. 14-cv-00033-JNP-BCW, (D. Utah Aug. 30, 2018); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261 (C.D. Cal. 2016); *Perkins v. Am. Nat'l Ins. Co.*, No. 05-cv-100, 2012 WL 2839788, at *5 (M.D. Ga. July 10, 2012) ("The Court is also satisfied that The National Consumer Law Center's mission, reputation and established track record will ensure that it will be a good steward of the grant award made to it.").

[10] *See* Stipulation ¶ 34. *See also* Notice ¶ 76.

11

administration of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement, beyond the amounts allocated to Authorized Claimants.[11]

## VI. CONCLUSION

As shown in the Villanova Declaration, of the 60,094 Claims received through March 25, 2021, Epiq has determined that 26,491 Claims are acceptable in whole or in part to participate in the distribution of the Net Settlement Fund, and that 33,603 Claims should be wholly rejected because they are ineligible for payment from the Net Settlement Fund. Villanova Decl. ¶¶ 37-40. Lead Plaintiffs respectfully request that the Court approve Epiq's administrative determinations accepting and rejecting Claims, as stated in the Villanova Declaration.

---

[11] Similar language has been routinely approved by courts in connection with the distribution of settlement proceeds. *See, e.g.*, *In re Force Protection, Inc. Sec. Litig.,* No. 08-cv-845, 2011 WL 13137137, at *2 (D.S.C. Aug. 2, 2011) ("[A]ll persons involved in the review, verification, calculation, tabulation, administration, or any other aspect of the processing of the claims submitted herein (the 'Claims Process') are released and discharged from any and all claims arising out of actions in the Claims Process which were taken substantially in accordance with the Stipulation and Settlement, the Plan of Allocation, or any Order of this Court, and all Class Members, whether or not they are to receive payment from the Net Class Settlement Fund, are barred from making any further claim against the Net Class Settlement Fund beyond the amount allocated to them pursuant to this Order…."); *In re Cnova N.V. Sec. Litig.,* No. 16-cv-00444, 2021 WL 100548, at *2 (S.D.N.Y. Jan 12, 2021) (approving substantially similar language in order authorizing distribution of settlement proceeds); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. 14-cv-3428-NFA, ECF No. 384 at 7 (S.D. Tex. Nov. 17, 2020) (same); *Thorpe v. Walter Inv. Mgmt., Corp.*, No. 14-20880, 2018 WL 3672266, at *2 (S.D. Fla. May 24, 2018), (same); *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*, No. 12-3824, 2015 WL 12839121, at *1 (E.D. Pa. Jan. 21, 2015) (same).

For the foregoing reasons, Lead Plaintiffs respectfully submit that Lead Plaintiffs' Motion for Approval of Settlement Distribution Plan should be granted, and the [Proposed] Order Approving Settlement Distribution Plan should be entered.

DATED: April 26, 2021             */s/ Marlon E. Kimpson*
                                  Marlon E. Kimpson (D.S.C. Bar No. 7487)
                                  William S. Norton (D.S.C. Bar No. 11343)
                                  Joshua C. Littlejohn (D.S.C. Bar No. 10426)
                                  **MOTLEY RICE LLC**
                                  28 Bridgeside Blvd.
                                  Mt. Pleasant, South Carolina 29464
                                  Telephone: (843) 216-9000
                                  Facsimile: (843) 216-9450
                                  mkimpson@motleyrice.com
                                  bnorton@motleyrice.com
                                  jlittlejohn@motleyrice.com

                                  *Liaison Counsel for Lead Plaintiffs West Virginia IMB and Blue Sky*

                                  John C. Browne *(admitted pro hac vice)*
                                  Jeroen Van Kwawegen *(admitted pro hac vice)*
                                  Lauren Ormsbee *(admitted pro hac vice)*
                                  Michael M. Mathai *(admitted pro hac vice)*
                                  Kate W. Aufses *(admitted pro hac vice)*
                                  **BERNSTEIN LITOWITZ BERGER**
                                  **& GROSSMANN LLP**
                                  1251 Avenue of the Americas
                                  New York, New York 10020
                                  Telephone: (212) 554-1400
                                  Facsimile: (212) 554-1444
                                  johnb@blbglaw.com
                                  jeroen@blbglaw.com
                                  lauren@blbglaw.com
                                  michael.mathai@blbglaw.com
                                  kate.aufses@blbglaw.com

                                  *Co-Lead Counsel for Lead Plaintiffs West Virginia IMB and Blue Sky and Lead Counsel for the Class*

James W. Johnson *(admitted pro hac vice)*
Michael H. Rogers *(admitted pro hac vice)*
Irina Vasilchenko *(admitted pro hac vice)*
James Christie *(admitted pro hac vice)*
Philip J. Leggio *(admitted pro hac vice)*
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jjohnson@labaton.com
mrogers@labaton.com
ivasilchenko@labaton.com
jchristie@labaton.com
pleggio@labaton.com

*Co-Lead Counsel for Lead Plaintiffs West Virginia IMB and Blue Sky and Lead Counsel for the Class*